PATTERSON v. TEMPLE.

LEGISLATURE—*When cannot create separate county courts.*—While the legislature may create judicial districts, and define the power and jurisdiction of the courts therein created, yet, it has no power to create, for a single specified county, two separate and distinct county courts, clothed with all the powers and duties appertaining to such tribunals, when the justices of the peace are selected from townships, whose area consists of less than six hundred square miles.

CONSTITUTIONAL LAW—*Act, approved March* 28, 1871, *unconstitutional.*—The Act, approved March 28, 1871, to "establish separate courts in the county of Sebastian," is in derogation of *Section* 12, *Article XV,* and *Section* 2, *Article X,* of the Constitution of the State of Arkansas, and is null and void.

CONSTRUCTION OF STATUTES—*Act, approved March* 16, 1869, *construed.*—The Act, approved *March* 16, 1869, *amendatory of an Act approved July* 21, 1868, *entitled "an Act to repeal Chapter* 44, *Gould's Digest,"* is not to be construed as an attempt, on the part of the legislature, to place a judicial construction on the Act of 1868, but the intention was, only, to allow a county seat to be removed by the expressed will of the electors.

COUNTY COURT—*Cannot set aside its judgment after lapse of term.*—A county court loses power over its judgments, on the lapse of the term at which they were rendered, and cannot set them aside at a subsequent term.

PROSECUTING ATTORNEY—*Cannot bring suit in behalf of the people.*—There is no law authorizing a prosecuting attorney to bring suit "in behalf of the people of the State of Arkansas," and a suit so brought should be dismissed for the want of proper parties.

APPEAL FROM SEBASTIAN CIRCUIT COURT.

HON. E. D. HAM, *Circuit Judge.*

*Gallagher, Newton & Hempstead,* for Appellant.

For more than four years previous to the year 1860, Greenwood was the county seat of Sebastian county, as it was for many years afterwards.

By *Section* 20, *Chapter* 44, *page* 297, *Gould's Digest,* county sites, established over four years, cannot be removed but upon paying inhabitants for their lots, etc. This is still in force by *Article VI, Section* 15, Constitution of Arkansas.

In 1860, two Circuit Courts were established in Sebastian

county, one to hold at Greenwood—county site—the other at Fort Smith. *Acts of* 1860, *page* 432.

By *Act of* 1868, *page* 135, provision was made by the legislature for removal of county site. The proposition had to be submitted to the voters, and had to receive a majority of votes of qualified electors of the county. An effort was made to remove county seat from Greenwood to Fort Smith; it failed, so county court adjudged. Contestants appealed.

By *Act of the Legislature of Arkansas,* 1868 and 1869, *page* 71, the Act of 1868 was amended so as to admit county site removed, by vote of majority of qualified electors voting, and made to apply to elections held under said act of 1868. We say the legislature had no authority—but three members of the county court removed county seat to Fort Smith. This action was void, no notice was given, the term passed. See *Rose's Digest, page* 145; *Code, Sections* 570, 571 *and* 572.

On the 28th of March, 1871, the Legislature, by an Act, divided Sebastian county into districts, etc. It is considered, by appellee, that this act was void, if so, no court can be holden at Fort Smith. The county seat is still at Greenwood, and everything, judicial, rendered by any pretended court, at Fort Smith, is *coram non.*

*DuVal & Cravens,* for Appellee.

Did the court below err in sustaining the demurrer of appellee to the petition for *mandamus?* If the act of the General Assembly, approved *March* 28, 1871, to amend "an act to establish separate courts in the county of Sebastian," is constitutional, then there can be no question that it erred, but if unconstitutional, then there was no error. We submit that the law was unconstitutional.

The act in question purports to provide for two separate and distinct judicial districts, within the limits of Sebastian county, but in fact creates two separate and distinct counties within the circuit of one, which, by the pleadings, is admitted to have had less than the constitutional number of square

miles, (see transcript, page, —,) at the time of the adoption of the present Constitution of Arkansas. See *Section* 12, *Article* 15; 1 *Blk. Comm.*, 113; *Art.* 10, *Sec.* 2, *Const.*, 1868; *Fletcher vs. Oliver, sheriff, etc.*, 25 *Ark.*, 295.

BENNETT, J.—On the 17th day of April, 1871, Newton J. Temple, Prosecuting Attorney for the third judicial district, filed, in the Circuit Court of Sebastian county, an application for a *mandamus* to compel William Patterson, as Clerk of the various courts of said county, to omit removing any of the books, records, papers, etc., to Greenwood, in said county, as he was required to do, under the act of the General Assembly, approved March 28, 1871, alleging said act is void, because its various provisions are in violation of the Constitution of the United States.

Said application, also, alleging that Fort Smith is the only county site of Sebastian county, and the only legal place to hold courts.

Defendant filed an answer with a demurrer clause. The answer sets up the act of the General Assembly; denies the jurisdiction of the court, and denies that Fort Smith ever was the county seat of Sebastian county; sets forth the facts in relation to said county seat history, and filed copies, duly authenticated, of the orders and judgments of the County Court in relation to the same.

The plaintiff filed a demurrer to the answer of the defendant.

Upon the hearing, the court overruled the demurrer to the application, and sustained the demurrer to the answer, and granted *mandamus* as prayed for.

Defendant appealed.

The principal question in the case is, whether the act of the General Assembly, entitled an "act to amend an act entitled an act to establish separate courts in the county of Sebastian," is unconstitutional and void.

The act, above entitled, provides for two separate and dis-

tinct judicial districts within the limits of Sebastian county; provides for the holding of two separate and distinct Circuit Courts, one to be styled "the Circuit Court of the county of Sebastian, for the Fort Smith district," the other to be styled, "the Circuit Court of the county of Sebastian, for the Green- wood district;" and provides that judgments rendered in each shall only be liens upon the real estate in the district where such judgments and decrees are rendered.

It also provides for separate Probate Courts, and the organization of two County Courts; that papers and records of the estates of deceased persons, within the territorial limits. of each district, shall be kept, either at Greenwood or Fort Smith.   The fact, as to which place such record shall be kept, to be determined by the former residence of such deceased person; provides for the separate assessment of property, the separate levying and collection of taxes; provides for a divis- ion of the indebtedness of the county in proportion to the taxa- ble property of each district; provides for separate and dis- tinct records of all matters pertaining to the public welfare, in each district; also, provides that a change of venue may be taken from one district to the other in the same manner as though these districts were separate and distinct constitu- tional counties of the State.

It is claimed, upon the part of the appellee, that the act of the General Assembly has effectually and completely abrogat- ed the corporate existence of the county of Sebastian, and has, in fact, created two counties, each of which is less in territorial area than six hundred square miles, and is there- fore in derogation of *Sec.* 1, *Art.* 15, of the Constitution, which says: "No county now established by law shall ever be reduced by the establishment of any new county or coun- ties to less than six hundred square miles; nor shall any new county be hereafter established which shall contain less than six hundred square miles."

In the consideration of the case, now before us, we are to set out with the presumption that every State statute, the

objects and provisions of which are among the acknowledged powers of legislation, is valid and constitutional, and that presumption is not to be overcome unless the contrary is clearly demonstrated. *Fletcher vs. Peck*, 6 *Cranch*, 87; *Ex parte McCollum*, 1 *Cowen*, 564; *Morris vs. The People*, 3 *Denio*, 381.

According to our republican theory, the whole power of government resides primarily in the people of the State. This power is usually denominated legislative, judicial and executive or administrative; the power to make laws, to interpret them and judge of their application, and to execute or administer them when thus made and interpreted.

The people, by their organic or fundamental law, have transferred these powers and distributed them into three departments. By this organism of government, each department has annexed to it, in the exercise of its functions, certain restraints and limitations, a violation of which renders their acts, to the extent of the violation, inoperative and void. When the legislative power is exercised, (and it has its several duties marked out and prescribed by the law to which they owe their origin,) it is not only essential that the will of the law-makers be expressed in due form of law, but that they should have expressed their determination in the mode and within the prescribed limits, as pointed out by the instrument which invests them with that power.

With the foregoing consideration in view, we will proceed to the examination of the objections urged against the law in question, which are founded upon its supposed incompatibility with the Constitution, the first of which is stated as above.

Blackstone defines a county to be a civil division of a State or kingdom for political and judicial purposes, formerly governed in England by an earl or count, from whom it derived its name. 1 *Blk. Com.*, 113, 116.

Kent says: "A county is a public corporation, created by the government for political purposes, and invested with

subordinate legislative powers, to be exercised for local purposes connected with the public good, and such powers are in general subject to the control of the Legislature of the State." 2 *Kent Com.*, 275.

The county court was sometimes, anciently, termed the county. *United States Digest—County.*

The territory of a State, for its more convenient jurisdiction and government, has been divided into counties, towns, and villages, to each of which has been delegated portions of the political and civil power of the State. They have been organized into separate and distinct communities or bodies politic, and are clothed with extensive authority, legislative, executive and judicial, for the purposes of local government. The amount of political authority so delegated, its distribution and arrangement in the different communities, vary. The powers and privileges conferred upon counties are more limited and simple in their operation than upon towns. But though the amount and distribution differs, the nature of the power conferred on each, and the object of granting them, are the same. They belong exclusively to the class that relate to the general concerns of the people, in their public, civil and political interests, in a word, to the *good* government of the place. It is only necessary to look into the internal organization of the counties, villages and cities, as defined and regulated by law, to confirm the general correctness of these observations. It will then be seen that in order to simplify and facilitate the administration and execution of these various powers, counties, as well as towns and cities, have been constituted bodies corporate, and expressly invested with all the essential attributes of the same. *Gould's Digest,* 287. The portion of sovereign authority, thus specially conferred upon these several civil divisions of the State, is granted by the Legislature, by general statutes, and is applicable to and is common to all countries. But, in each, a large mass of power has been left to the exercise of the discretion and judgment of the several heads of these bodies politic.

Thus, in cities, large discretionary power is vested in the mayor, aldermen and council; in towns, usually to trustees; in counties, in the county court. The county court represents the civil and political power of the county, its rights and obligations. It is through this medium that the county, in its municipal character, as a corporation, may be acted upon, for there is no other court or officer known in its organization that can or should represent it.

While the people, in their sovereign capacity, have not prescribed the area of a town or city, they have deemed it of sufficient importance to say that there should be no portion of the territory of the State created into a county, unless it contained at least six hundred square miles.

Under the general statute providing for the more efficient organization of counties, and defining who should be the representative of this political sub-division, it will be seen that a body consisting of the justices of the peace of the various townships within their territorial limits, or two of them, selected for that purpose, at an election in which all justices of the county may participate, and presided over by the judge of the county, shall be the head of the county.

Then, if a county is a public corporation, which the people, in their organic act, have said shall not consist of less than six hundred square miles, and within whose boundaries the people are invested with the powers of certain local matters, pertaining alike to all the persons within those defined limits, and to whose judgment and discretion the vital powers and interests of all the people, as their agent, the county court, are entrusted, can the General Assembly create, for a single specified county, two separate and distinct county courts, clothed with all the powers and duties appertaining to such tribunals, when the justices of the peace are selected from townships whose area is admitted to consist of less than six hundred square miles, as is the case now at bar? We think not.

The enactment, under consideration, attempts to divide

Sebastian county into two judicial districts, creates two Circuit, two Chancery, two Probate and two County Courts, and provides that each "shall be as independent of, and distinct from each other, and shall hold the same relation to each other as if they were courts of different constitutional counties of this State, and shall be deemed, for all purposes of this act, separate and distinct counties, with original and exclusive jurisdiction within their respective territorial limits."

Thus it will be seen that the Legislature is providing for all the attributes of a county, and creating all the essential features of these public corporations as effectually as though each sub-division was called Fort Smith and Greenwood counties. The individuality, so to speak, of Sebastian county, is entirely destroyed and obliterated, and is only recognized in the fact that the official existence of the sheriff, clerk, treasurer and county judge is allowed to remain as monuments to mark the spot where now lies the defunct body of Sebastian county.

And these are the only officers which the Legislature has said may perform the duties of their respective offices, the duties and powers of which are determined by the territorial limits of each of these two districts, as much as though they were two separate and distinct constitutional counties. The county judge must preside over the County Court of Greenwood district, consisted of only justices selected within the townships of that district, and at a different time and place from that of the Fort Smith district. The same in the Fort Smith district.

The sheriff is prescribed in his duties the same as though there were two counties. The clerk must keep two offices, one in each district, and all matters of public record pertaining to either must be kept separate and distinct. So with the treasurer; although nominally treasurer of Sebastian county, he is required to keep two offices, and all financial affairs of either must be kept apart. What more could have been
14

required had the General Assembly provided for the election of these officers in each district? While, in name, they may be officers of Sebastian county, they are, in fact, only sheriffs, clerks, treasurers, and judges of these two districts.

But, it may be said, the General Assembly can create judicial districts and define the powers and jurisdiction of the courts therein created. While we may accede to that proposition, taken in its general sense, we emphatically deny that it can do so for Sebastian county, as a county, and thereby destroy all its corporate existence in that indirect way, and virtually make two counties under the name of districts. That this was the evident intention of the legislature, there can be no doubt, as the act, in several instances, expressly states that these several subdivisions shall be considered as independent of each other, as "constitutional counties," thereby endeavoring to destroy the separate existence of Sebastian county, and deprive it of the power to act in its capacity as one of the counties of the State of Arkansas.

Again, *Sec.* 2, *Article X*, of the Constitution of the State of Arkansas, says: "Laws shall be passed taxing by a uniform rule all money credit, investments in bonds, joint stock companies or otherwise; and also all real or personal property, according to its true value in money. * * * * * Real estate shall be appraised at least once every five years." * * *

This court, in the case of *Fletcher v. Oliver*, 25. *Ark.*, 295, has said that "*taxing by an uniform rule* means by one and the same unvarying standard; uniformity not only in the *rate* of taxation, but uniformity in the *mode* of assessment, by which the value is ascertained. There must be an equality of burden. This uniformity must be co-extensive with the territory to which it applies. If a State tax, it must be uniform all over the State, if a county * * * * it must be uniform throughout the extent of territory to which it applies; the property within these legal subdivisions, established by law for the convenience of the people, must all pay homage to the one uniform rule."

The County Courts, of the respective counties, are the financial controllers of their respective counties. They are the only mediums through which a county tax can be levied or assessed on the property of the county. There cannot be two tax assessing or levying powers, within the limits of any one county, for county purposes. Yet this act declares "that the *County Court* of each district shall have the same and like duties and powers in every particular, in relation to the assessment, levying, adjustment, and correction of the tax list, and in all matters and things in relation to levying, assessing, and collecting the moneys of said districts, as is conferred upon *other constitutional counties.*" And further provides, that these districts shall only pay the county expenses arising within the limits of these respective districts, and all claims against each shall be audited, allowed and disposed of by the County Court of each district; even the maintenance and support of paupers, and the establishment and supervision of public highways, are made to depend upon the action of each of these separate County Courts, each of which is to act in like manner and form as required by law for other counties.

That these two tribunals, composed of separate individuals, and dividing the indebtedness of the county into two parts, in proportion to the property of each, each making separate items of indebtedness in their respective capacities, can audit, allow, and dispose of them, by one "uniform rule of taxation," would be to suppose an impossibility. The general tenor of the Constitution of the State, is in favor of general legislation, and to discontinue special enactments. In fact, in many instances, special legislation is expressly forbidden. And while constitutional restrictions are imperative, where expressly stated, we think the intention of the people may be looked to, in at least so important a matter as the one under consideration, and can say that the unity of a county cannot be so severed as to make two out of one, each being, in all respects, equal with the other, and they, in common, alike to all other counties of the State, without violating constitutional

restraints.   In fact, the constitutionality of this act is admitted by counsel for appellant and appellee, but that fact would not warrant us in deciding it so.  This duty is one from which any judge, conscious of the fallibility of human judgment, will shrink, when he can conscientiously and with due regard to his official oath, decline the responsibility.   But being required to declare what the law is, in the cases which come before them, they must enforce the Constitution as the paramount law.   Still, it may be said that parts of this enactment may be void, because repugnant to the Constitution, and the balance may be good law.   Cooley, in his work on constitutional limitations, 177, says: "Whether the other parts of the statute must be adjudged void because of the association, must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder."

Now the objects of this law were to create two separate and distinct districts in Sebastian county, with all the powers and immunities of any constitutional county of the State, the area of each being less than six hundred square miles; which object, if carried out, would destroy the identity of Sebastian county.   This, we say, cannot be done.   Upon an examination of the whole act, each section is interwoven with the other in such a manner that no court could separate them without destroying the whole fabric and, with the fall of one, the whole enactment must be declared void.

Another question is then presented in the case, which we deem of vital importance to the people of Sebastian county. Where is the county seat of that county?

For many years prior to the 21st day of January, 1861, (more than six years,) the county of Sebastian was established in the State, and its county seat was located at Greenwood, which remained the county seat of said county, without any doubt or dissent, up to the month of April, 1870.

From the time of the location of the county seat of Sebastian county, at Greenwood, up to the 21st day of January,

1861, all the courts, circuit, chancery, county and probate, were there holden at the times and as required by law.

On the 21st day of January, 1861, the legislature of the State, by an act thereof, approved on that day, divided the county of Sebastian into two judicial districts, called respectively Greenwood and Fort Smith districts. *See Acts of the Legislature of the State*, 1860–1, entitled, "An Act to establish separate courts in the *county of Sebastian.*" Probate Courts of Sebastian county were to be holden at the times then prescribed by law. (*3d Mondays January, April, July, October. Gould's Digest*, 311, *Sec.* 11.) Probate Courts in the Fort Smith district, on the first Mondays of those months. (*Sec.* 9.) But County Court was holden at Greenwood, inasmuch as the same was retained as the county seat. And in fine, as to all matters not within the provisions of said act, the county of Sebastian retained its organization as an entire county. *Sec.* 2 of this act, in speaking of the place where the circuit, chancery and probate courts shall be held, says, that these courts, "in and for the Greenwood district, shall continue to be held *at the county seat at Greenwood.*" Up to the passage of the act of the Arkansas legislature, *approved the* 21*st of January*, 1861, there was but one place of holding any of the courts of said county, and that was at Greenwood, the county seat.

By an Act of the General Assembly, entitled "an Act to repeal Chapter 44, of Gould's Digest," it was, among other things, enacted that whenever one third of the qualified electors of any county should petition the County Court for the removal of the seat of such county to any other designated place, the court should order an election, etc., etc.; and if it should appear by such election that a *majority* of the *qualified electors*, of said county, are in favor of the removal of said county seat, then that court should appoint commissioners * * * * and that whenever such election should be so held, if successful, the county seat could not be again removed for the space of ten years, and in case the proposition did not receive such majority, then no other proposition for such

removal should be submitted for the space of five years thereafter. See *Acts of the Legislature of Arkansas, session of* 1868, 135, *approved July* 21, 1868.

Under the provisions of this Act, at the October term, 1868, (to wit: on the 12th day of November, 1868) a petition of many citizens was presented to the county court of Sebastian county, at Greenwood, the county seat, praying for an election to be ordered to remove the county seat of said county from Greenwood to Fort Smith, and the court being satisfied that said petition was signed by more than one-third of the qualified electors, ordered an election, under the above mentioned Act, last aforesaid, to take place on the 26th day of December, 1868.

Said election was accordingly held, and the same reported to said County Court, at its January term, 1869, and on the 12th day of January, the court found that the proposition, to remove the county seat of Sebastian county, did not receive the support and votes of a majority of the qualified electors of said county, and it was therefore lost; seven of the members of said court so deciding, and three voting contrary.

On the 12th day of April, 1869, upon a petition to have the County Court appoint three commissioners to select a site, in the city of Fort Smith, whereupon to locate county buildings, the court refused to appoint such commissioners, because a majority of the qualified electors of the county had not voted for the removal of the county seat.

By an Act of the Legislature of the State, entitled "an Act to amend an Act to repeal Chapter 44 of Gould's Digest, and for other purposes," approved March 16, 1869, it was among other things provided, that whenever one-third of the qualified electors of a county should petition for an election to remove the county seat, it should be ordered by the County Court; notice given and election held, and "if it shall appear by such election that a *majority* of the *qualified voters, voting* at such election in said county, are in favor of the removal of

the county seat of such county, then the County Court should appoint commissioners etc.;" and it was further enacted " that *any* election which may have been held, under the provisions of an act of which this act is amendatory, *shall be deemed* to have been held according to the provisions of this act, and shall be as valid as if this act had been in force at the time of holding this election." *Acts of session of* 1868 *and* 1869, 75.

On the 10th day of January, 1870, James E. Bennett, William Patterson and David A. McKibben presented a motion to the County Court of Sebastian county, which, by the court was sustained, and the court, in pursuance thereof, then and there declared the orders and judgments made and rendered, on the 12th day of January and 13th day of February, 1869, *null* and *void*, and then and there declared that under and by virtue of said election, had and held on the 26th December, 1868, the county seat was removed from Greenwood to Fort Smith, and proceeded to appoint commissioners to select suitable buildings, which were accepted, and the records and papers, etc., were removed to Fort Smith.

There can be no doubt the county seat of Sebastian county was at Greenwood up to the time of the enactment of 1860, which created the county into two districts; nor does that law attempt to say that Greenwood is not the county seat, but only provides that certain courts may be held at Fort Smith. Section two, on the contrary, says Greenwood is the county seat. Therefore, up to the time the proposition was submitted to the people by the County Court, under the Act of 1868, that question must be considered settled. But, by the facts as above stated, it will be seen that the County Court twice declared, in a solemn adjudication of the question properly brought before them, that the proposition of the removal was not carried by the people.

After nearly a year had elapsed, and both terms, at which these final orders were entered up, had finally adjourned, the County Court, composed of different justices of the peace from the previous County Court, attempt, in this summary

manner, to set aside their final orders, without notice, and say they shall be held for naught.

This court has repeatedly held that courts have no control over judgments and final orders, after the adjournment of the term at which such final order or judgment was rendered. *Smith vs. Dudley*, 2 *Ark.*, 66; *Walker vs. Jefferson*, 5 *Ark*, 23; *Ashley vs. Hyde*, 6 *Ark.*, 92. All proceedings had in the cause, subsequent to final judgment, after the close of the term, must be considered a *coram. non judice*. *Mayor & Aldermen of Little Rock vs. Bullock*, 6 *Ark.*, 282.

A County Court loses power over its judgments on the lapse of the term at which they are rendered, and cannot set them aside at a subsequent term. *Reiff et al vs. Conner*, 10 *Arkansas*, 241.

If the rule, as laid down in the above cited cases, has been changed by the Code in *Section* 571, *page* 176, then a judgment or final order can only be set aside on notice, upon complaint filed, etc., as provided in *Section* 573, which was not done in the case before us. Again, if the action of the last County Court was based on so much of the Act of March 16, 1869, as made the provisions of that law apply to elections held under the law to which that was amendatory, it certainly cannot be upheld. That provision of the law, if good, must work a great hardship upon the voters of Sebastian county. It, in fact, is but downright fraud upon them. An election is held in pursuance of legislative authority, upon a proposition that requires a majority of *all the electors* in the county to carry it.

All persons are presumed to know the law under which they are required to act. At the election now under consideration, it was not required that a single vote be cast *against* the removal of the county seat at Greenwood, but there must have been a *majority of all the qualified voters* of the *county* who voted in favor of the removal. Those who were opposed to the removal could have stayed at home, or if voting, could have voted against, and either would have the

same effect. Not so under the amendatory law. Under that one, a majority of the votes cast were sufficient to carry the election. The elector who did not vote was one vote lost upon the proposition. Whatever may have been the intention of the Legislature in this respect, we can indulge in no presumption which would recognize the attempt of the Legislature to place a judicial construction on the Act of 1868. The intention, no doubt, of the Legislature, was to allow a county seat removed by the will of the electors. To construe *Section* 17, of the Act of March 16, 1869, so as to cause a removal, without the expressed will of the people, would place it in antagonism to the body of the Act, and it would be nugatory.

We are also of the opinion that all the proceedings of the County Court of Sebastian county, on the 10th day of January, 1870, in so far as it attempts to set aside the judgments or final orders of the previous County Courts, in relation to the county seat elections, and the assumption of jurisdiction of the matter, and making different orders, must be considered as null and void.

Thus, it must be seen that neither by the act of 1868, nor the subsequent act of 1869, amendatory thereto, was the action of the County Court of Sebastian county, in attempting to remove the county site from Greenwood to Fort Smith, of any validity whatever. Greenwood remains the county seat to-day.

Another question arises upon the face of the record, which we deem of sufficient importance to notice; in fact the solution of this question would have saved us the many pages of this opinion, but, the question in the case being one of great public interest to all the people of Sebastian county, we would have been guilty of dereliction of duty, if we had avoided an adjudication of it upon a technical question of practice as to who were the proper parties to have brought this suit.

The petition is styled *Newton J. Temple, Esq., prosecuting*

*attorney for the State in behalf of the people, etc., vs William Patterson, as clerk of Sebastian county.*

The petition then sets out and says: "Newton J. Temple, prosecuting attorney for the State of Arkansas for the fifth judicial circuit, in behalf of the people of the State of Arkansas, states, etc."

We know of no law that authorizes Newton J. Temple, as prosecuting attorney, to bring any suit "in behalf of the people of the State of Arkansas."

The State is not an infant, nor is it insane, so as to need a guardian to represent it in any of its courts. It can appear by itself as the "State of Arkansas," and sue and be sued, restrain and enforce, by its own name, any judgment for or against itself.

Therefore, the petition should have been dismissed for the want of proper parties in the court below. For this error, the judgment of the Circuit Court of Sebastian county is reversed and cause remanded, with instructions to dismiss the petition at the cost of the petitioner.