BONNER *v.* JACKSON.

Opinion delivered May 7, 1923.

1. EVIDENCE—JUDICIAL NOTICE.—The courts take judicial notice of the map of the State.

2. COUNTIES—JUDICIAL DISTRICT—BOUNDARIES.—Special Act No. 111 of Acts 1923. creating the Central Judicial District of Woodruff County, describes the area to be included, in part, as follows: "Beginning at the northwest corner of section 2, township 8 north, range 3 west, and running thence east on the boundary line of Woodruff County to the northeast corner of said county," etc. Though the northwest corner of section 2, township 8 north, range 3 west, is not on the boundary line of the county, it is in line with the north boundary. *Held* that the act contemplated the drawing of a line as the north boundary of the Central District due east from the northwest corner of the county to the northeast corner of the county, which is at the northeast corner of township 8 north, range 1 west.

3. STATUTES—REASONABLENESS.—A statute creating a third judicial district in a county will not be declared invalid because it reduces an existing district to an area so small that it will interfere with the enforcement of the law, as the courts do not substitute their judgment for that of the lawmakers with respect to the creation of separate judicial districts in counties.

4. COUNTIES—JUDICIAL DISTRICTS—VALIDITY.—The validity of special act No. 111 of 1923, creating the Central Judicial District of Woodruff County is not affected by the passage at the same session of special act No. 166, authorizing the removal of the county seat of Woodruff County from Augusta to McCrory upon a vote of the electors of the county.

5. COUNTIES—JUDICIAL DISTRICTS—VALIDITY.—Where an act dividing a county into judicial districts cuts up the townships in

such a way that the right of appeal is denied as a temporary result, since the county court may change township lines, it will be presumed that by a rearrangement of township lines the inconvenience will be removed.

6. COUNTIES—JUDICIAL DISTRICTS—INVALID PORTION OF ACT.—If an act providing for creation of three judicial districts in a county be invalid in providing for the holding of separate county and probate courts in each district be invalid, such provision may be stricken out and the remainder of the act upheld, where the act provides that the void provision shall be declared to be void and the remainder of the act stand.

7. COUNTIES—UNITY—IMPAIRMENT.—The unity of a county is not impaired by a statute providing for the holding of the county court at a place other than the county seat.

Appeal from Woodruff Chancery Court, Northern, District; *A. L. Hutchins,* Chancellor; affirmed.

*Carl E. Bailey, W. J. Dungan, R. M. Hutchins, Jonas F. Dyson, Harry M. Woods,* and *J. F. Summers,* for appellant.

The legislative intent may be shown by the act itself, by other official record of like character, and by other facts of which courts are bound to take judicial notice. Act No. 166 should be construed together with act challenged. 28 Ark. 328; 135 Ark. 301; 45 Ark. 387; 47 Ark. 388; 3 Ark. 56; 5 Ark. 349; 40 Ark. 448; 48 Ark. 308; 25 R. C., L. 1060-62; 36 Cyc. 1147-1151; 66 S. W. 979; 35 Ark. 56. Acts so construed in conflict with sec. 2, art. 3, Constitution. Courts are bound to take judicial notice of the public laws of the State. 7 Enc. of Evidence, 947, 881; 6 R. C. L. 76-79; 181 U. S. 283. Act is void on its face; violates the Constitution by dividing townships and destroying the appellate jurisdiction and superintending control of circuit courts. Art. 7, sec. 14, Constitution; 68 Ark. 561; 102 Ark. 266; 66 Ark. 180; 6 R. C. L. 82, par. 80. Construction of law not affected by county court's power to remedy defect, which would require time and deprive litigants of guaranty of sec. 13, art. 6, Constitution. Boundary of Central District insufficiently described. 36 Ark. 331; 106 Ark. 517. Courts

cannot supply legislative defects and omissions. 104 Ark. 583; 36 Cyc. 1113; Lewis' Sutherland, Stat. Constr. par. 411; 61 N. J. L. 107, 38 Atl. 685; 3 A. L. R. 398; 122 Ark. 491. The act is a patent absurdity.

*Roy D. Campbell* and *Ross Mathis,* for appellees.

Rule for construction of statute, when challenged as unconstitutional. 27 Ark. 352; 6 R. C. L. 75; 76 Ark. 199. Act 111, creating the Central District of the county, followed well-established lines. Sec. 12, art. 7, Const. Acts dividing county into districts invariably upheld. 35 Ark. 380; 80 Ark. 150; 55 Ark. 323; 56 Ark. 4; 42 Ark. 34; 46 Ark. 229; 60 Ark. 343; 35 Ark. 389, conclusive of this question. Intention of the act must be derived from law itself. 35 Ark. 59; 140 Ark. 479. Appellate and supervisory jurisdiction of the circuit court not impaired by act. Makes no difference that certain political townships are divided by lines of district. 35 Ark. 60; 135 Ark. 304; 28 Ark. 378. County court has plenary power to remedy any defect caused by division of townships. Sec. 10288, Crawford & Moses' Digest. See also §§ 6403 and 10293, C. & M. Digest; 26 R. C. L. 790; 142 Ark. 454. No insufficient description of boundaries of the district. Appellant has an adequate remedy at law by appeal. 73 Ark. 527; 102 Ark. 287; 135 Ark. 111; 122 Ark. 557; 118 Ark. 334. No absurdity about the act. None of the court's business that the Legislature saw fit to divide the county into three districts. *Little Rock* v. *North Little Rock,* 72 Ark. 195.

*Carl E. Bailey, W. J. Dungan, R. M. Hutchins, Jonas F. Dyson, Harry M. Woods,* and *J. F. Summers,* in reply.

Court of equity had jurisdiction. 34 Ark. 310; 130 Ark. 116. It is proper to consider the two acts together. 35 Ark. 59. Endl. Inter. Statutes, §§ 43-52; 93 S. W. 436; Sutherland, Statutory Constr., § 238.

McCulloch, C. J. Appellant is a citizen and taxpayer of Woodruff County, and he instituted this action in the chancery court challenging the validity of a statute enacted by the General Assembly of 1923 (act

No. 111, approved February 12, 1923), creating another court district for that county, designated as the Central Judicial District of Woodruff County, and seeking to restrain the county clerk and clerk of the circuit court from purchasing supplies and establishing their offices in accordance with the directions of said statute.

Prior to the enactment of the challenged statute there were two court districts in Woodruff County, one designated as the Northern District, with Augusta, the county seat, designated as the place for holding the courts, and the other designated as the Southern District, with Cotton Plant as the place designated for holding the courts and maintaining the offices. The two districts were divided by a line running east and west through the county, near the center. The following named townships comprise the Northern District: Dent, Pumpkin Bend, Barnes, Devue, White River, Augusta, and Point townships; and the following townships comprise the Southern District, namely: Franks, Caney, Cache, Cotton Plant, Freeman and Garden townships.

In the new statute, now under consideration, Central District of Woodruff County is described by metes and bounds, and covers the northeastern portion of the county, the eastern line running through the middle of some of the townships comprising, in part, the Northern District, and also running through the middle of some of the townships comprising, in part, the Southern District.

The chancery court sustained a demurrer to appellant's complaint, and dismissed the complaint for want of equity.

It is contended that the description of the territory embraced in Central District is so vague and uncertain that it cannot be definitely determined what was meant by the language used, and that for this reason the statute must fail for the want of sufficient description of the boundaries of the district.

It will be observed, from examination of the map of the State, of which we are, under settled rules, permitted to take cognizance, that White River forms the west boundary line of Woodruff County, and that the north boundary line is irregular in that the whole of a congressional township (9 north, range 3 west) is included in the county, and the north boundary of that township forms, in part, the north boundary line of the county, but that the north boundary line then drops down to township 8 north and runs along the north boundary line of township 8 north, range 1 west and range 2 west. The description of the area to be included is, in part, as follows:

"Beginning at the northwest corner of section 2, township 8 north, range 3 west, and running thence east on the boundary line of Woodruff County to the northeast corner of said county," etc.

Now the contention is that the northwest corner of section 2, township 8 north, range 3 west, is not on the boundary line of the county, and that this makes the words of description so indefinite that it is impossible to give any effect to them. It will be observed, however, that the northwest corner of said section 2 is in line with the north boundary, and it seems reasonably clear, from a consideration of the language used, that what the framers of the statute meant was that the description was to begin at that point and run east in line with the north boundary. It requires no strained construction of the language used to see clearly that the framers of the act meant to draw a line as the north boundary of the Central District due east from the northwest corner of section 2 in township 8 north, range 3 west, to the northeast corner of the county, which is at the northeast corner of township 8 north, range 1 west. It is not necessary to read anything into the statute to reach this conclusion, for a mere inspection of the map reveals very clearly, we think, what was meant by the use of the language in the descriptive part of the statute.

It is further argued that the act is void on its face for the reason that it inevitably leads to absurd results, in that it reduces one of the districts (the Northern District) in which the county seat is situated, to an area so small that it will seriously interfere with the enforcement of the law, and that if this act be upheld the Legislature may continue to create other districts in that county to suit the pleasure and convenience of every locality in the county. The substance of this attack is that the court should be the judge of the feasibility of the statute and the convenience or inconvenience to result therefrom, and that we should declare the act void because it is an improvident piece of legislation. Statutes creating court districts have been repeatedly upheld as valid by this court, and we do not feel at liberty to substitute our judgment for that of the lawmakers upon the question of convenience of the people of a county with respect to the creation of separate districts. *Walker* v. *State,* 35 Ark. 385; *Pryor* v. *Murphy,* 80 Ark. 150.

Our attention is called to the fact that the General Assembly, at the session of 1923, a few days after the approval of the statute now under consideration, also enacted a statute (Act No. 166), authorizing the removal of the county seat of Woodruff County from Augusta to McCrory, upon a vote of the electors of the county, and that this statute should be considered along with the other for the purpose of determining its validity, and that, when so considered, it shows that the two statutes were passed merely for the purpose of coercing the people of the Northern District into voting for the removal of the county seat. It may be conceded that it is proper for us to consider both of the statutes, for the reason that they deal with somewhat kindred subjects, but we see no reason why a consideration of both the statutes would lead to any absurd or illegal results. As before stated, we are not at liberty to substitute our judgment for that of the lawmakers as to the best way to serve the people of a county with respect to their court

facilities, and neither of the statutes, upon its face, affords any reason why we should hold the statute now under consideration to be void. Of course, we are not considering now any question relating to the validity of the removal statute, for that is not before us, except so far as it may affect the validity of act No. 111.

The contention is also made that the statute creating the new district is void because it splits up existing townships and denies the inhabitants of those townships the right of appeal to the circuit court. It is alleged that for this reason the act constitutes a deprivation of the right of appeal, and that on that account it offends against the Constitution.

The statute provides that the circuit and chancery courts are to be held in the respective districts of the county and shall have exclusive and original jurisdiction over the territory allotted to the district, the same as if each district constituted a separate county. This would necessarily carry with it the right of appeal, as guaranteed by the Constitution, from a justice of the peace to the circuit court of the particular district in which the township is situated. There is no express provision in the statute concerning the change of boundaries of townships which are split by the new statute, and this is a point which is urged as a reason why the statute is void, because it would be impossible to determine to which of the courts an appeal would lie from a judgment rendered by the justice of the peace in a township thus divided.

A sufficient answer to this contention is that there is a statute which imposes upon the county courts of the respective counties the duty to "from time to time," as occasion may require, divide the county into convenient townships, subdivide those already established, and alter township lines." Crawford & Moses' Digest, § 10288. Conceding, for the sake of argument, that the division of a township would result in a denial of the right of appeal, this, at most, would only be a temporary result, which, it must be presumed, would be corrected by the

county court, pursuant to the mandate of the statute. Temporary inconvenience may result from the enactment of any statute, but this affords no reason why the statute itself should be stricken down. This court has held that a statute itself revising the time for holding courts in a judicial district which has the effect of depriving a county of one of the semi-annual terms of court is not void on that account. *Parker* v. *Sanders,* 46 Ark. 229.

Where the effect of a statute might result in a temporary denial of a right guaranteed by the Constitution, if that result can be obviated by further remedial proceedings authorized by law, we must assume that these proceedings will be inaugurated and carried to a successful conclusion so as to restore all guaranteed rights. So in this instance we must assume that the county court will expeditiously rearrange the townships so that there may be no uncertainty as to the right of appeal.

Finally, the question arises as to whether or not the statute is invalid on account of containing a provision with respect not only to the holding of circuit and chancery courts in each district, but also for the holding of county courts in each of the districts. After fully providing for the holding of separate circuit and chancery courts in each district and the exercise of exclusive jurisdiction in the respective districts, and also regulating the issuance of process *et cetera,* § 19 provides that terms of the county and probate courts of Woodruff County should be held in each of the three districts, and that the jurisdiction of said courts shall extend over the respective districts "as if said district was a constitutional county of this State;" that the said county court and probate court of the Central District shall have original and exclusive jurisdiction of all such cases as are now by law vested in the county and probate courts of this State: that the county clerk shall maintain an office in the town of McCrory in the Central District, where the clerk or a deputy shall reside; that

the county clerk shall make out a separate taxbook for the different districts, and that it shall be the duty of the collector of taxes to collect taxes in the respective districts "as now provided by law, the same as if said districts were separate and distinct counties," and that all tax sales and notices relating thereto, or other court proceedings "now required to be advertised by law shall be advertised and held as provided by law in the respective districts as provided by law, in like manner as if said districts were separate and distinct counties."

The question of the validity of the provision concerning the holding of county and probate courts in each of the districts is not directly presented here, further than its effects upon the validity of the statute as a whole, and we might content ourselves with answering the attack on this ground by pointing to § 20, which reads as follows:

"If any provision in this act is held unconstitional, only that provision shall be declared to be void, and the remainder of this act shall stand."

If it is to be conceded that the portion of the statute having reference to the holding of separate county and probate courts in the districts be invalid, it would not affect the validity of the remainder of the statute. *Snetzer* v. *Gregg,* 129 Ark. 542; *Sallee* v. *Dalton,* 138 Ark. 549. We must accept this as a legislative declaration of an intention to exercise its power to its full extent under the Constitution, and there is no reason why the provision affecting the holding of separate county courts could not be stricken out without impairing the validity of the other parts of the statute, which are in nowise dependent upon the provision with reference to the holding of separate terms of the county court. We hold that the effect of § 20 is to preserve the validity of all parts of the statute not otherwise found to be invalid. But, inasmuch as the question of validity of the feature of this statute relating to terms of the county and probate courts may sooner or later arise, and as

there are other statutes which have long been in force in other counties, creating separate districts and containing like provisions with respect to holding separate county courts without containing a provision similar to § 20 of the present statute, we deem it not inappropriate to decide the question whether or not this provision is valid. That question has never been expressly decided by this court, but in two of the decisions the validity of such a provision seems to have been assumed. *Hutchinson* v. *Ozark Land Co.,* 57 Ark. 554; *Clay County* v. *Bank of Knobel,* 105 Ark. 450.

In the first case cited above the court had under consideration the question of the validity of separate rates of taxation for different portions of Clay County, and it was held that taxation must be uniform throughout the county, notwithstanding the provision of the statute creating separate districts and authorizing separate collection of taxes and the holding of county courts in each district. Disposing of the matter, Judge MANSFIELD, speaking for the court, said:

"The objection to the tax is that it violates the rule of uniformity prescribed by the Constitution and to which all taxation in this State must conform. * * * * This is met by the argument that the Legislature has made the two districts of Clay County taxing districts, and that, as the tax levied on the property of the Eastern District is at a uniform rate throughout that district, a less rate may, consistently with the Constitution, be imposed upon the property of the Western District. But it was not within the power of the Legislature to create a district for the levy of the tax in question that did not embrace the whole county. The tax was for a county purpose, and its burden could not be imposed upon a part only of the county's territory."

Further along the court, in the opinion, said: "The expense of maintaining the two judicial districts in a county is necessarily a county expense, and the revenue to pay it can be raised only by a county tax. Such tax,

to be valid, must be levied at a uniform rate upon all the taxable property of the county."

The court also took occasion to say, with reference to certain sections of the statute providing for the separate collection of taxes, that it was difficult to see what effect could be given to those provisions, but that, whatever effect they might have, they could not alter the fact that the unity of power which the Constitution secured to a county as a political subdivision could not be impaired.

The other case cited (*Clay County* v. *Bank of Knobel*) merely involved the question of an appeal from the board of equalization to the county court of one of the districts, and it seems to have been assumed, without deciding, that separate terms of the county court might be held in each district. There is not in either of those decisions, as before stated, anything which directly decides the question of the validity or invalidity of a statute authorizing the holding of separate terms of a county court. We find nothing, however, in the Constitution which prohibits the Legislature from authorizing the holding of terms of the county court in different places in the county. The Constitution is silent on the subject, and the mere fact that there is a provision for creating county seats does not necessarily imply that any or all the courts of the county must be held at that place, or rather, that they cannot be held at other places. The Constitution is silent as to where the circuit and chancery courts shall be held, and it has been decided by this court that this does not exclude the power of the Legislature to provide for terms to be held at places other than the county seat. *Walker* v. *State, supra.*

Nothing must be done, as held in *Hutchinson* v. *Ozark Land Co., supra,* that will constitute an impairment of the unity of the county which is secured by the Constitution. The county is a unit of government and a unit of taxation, and all taxes levied for county purposes must be uniform throughout the county, and must be used

uniformly for county purposes. Taxes in one part of a county cannot be levied and used for other than county purposes as a whole, but the holding of a term of the county court at a place other than the county seat is for the convenience of the people, and it in nowise disturbs or impairs the unity of the county; the court must be held 'by the same judge and for the same purposes, regardless of the place at which the term is held, and, as before stated, the mere fact that a county seat is provided does not necessarily imply that everything done for and in the name of the county must be done at that place. It is necessarily the seat of county government, but it does not follow that all things done for the county must be done at that place. Our conclusion therefore is that this particular provision of the statute is valid, as well as all other provisions to which our attention has been called. It follows therefore that the attack upon the validity of the statute is unfounded, and the chancellor was correct in so holding.

Decree affirmed.

HART, J., (dissenting). I dissent on the ground that the act in question violates art. 13, § 1, of our Constitution, which provides that no county now established shall be reduced to an area of less than 600 square miles. The act purports to create the Central Judicial District of Woodruff County. But it also provids for a county court, the authority and territorial jurisdiction of which shall extend over the Central District the same and in like manner as if said district was a constitutional county of this State.

Blackstone defines a county to be a civil division of a State for political and judicial purposes, and the act in question provides in practial effect all the attributes of a county, thereby reducing Woodruff County below the constitutional area. Our Constitution of 1868 contained a provision that no county already established should ever be reduced by the establishment of any new county or counties to less than 600 square miles. The Legisla-

ture of 1871 passed an act purporting to divide Sebastian County into two judicial districts, and separate county, as well as probate, circuit, and chancery, courts were created.

The act provided that each of said courts "shall be as independent of and distinct from each other, and shall hold the same relation to each other, as if they were courts of different constitutional counties of this State, and shall be deemed, for all purposes of this act, separate and distinct counties, with original and exclusive jurisdiction within their territorial limits."

In *Patterson* v. *Temple,* 27 Ark. 202, the act came up to this court for construction, and the court held: "While the Legislature may create judicial districts, and define the power and jurisdiction of the courts therein created, yet it has no power to create, for a single specified county, two separate and distinct county courts, clothed with all the powers and duties appertaining to such tribunals, when the justices of the peace are selected from townships whose area consists of less than six hundred square miles."

In discussing the question the court said: "Then, if a county is a public corporation, which the people, in their organic act, have said shall not consist of less than six hundred square miles, and within whose boundaries the people are invested with the powers of certain local matters pertaining alike to all the persons within those defined limits, and to whose judgment and discretion the vital powers and interests of all the people, as their agent, the county court, are intrusted, can the General Assembly create, for a single specified county, two separate and distinct county courts, clothed with all the powers and duties appertaining to such tribunals, when the justices of the peace are selected from townships whose area is admitted to consist of less than six hundred square miles, as in the case now at bar? We think not."

Continuing the discussion, the court again said: "Thus it will be seen that the Legislature is providing

for all the attributes of a county and creating all the essential features of these public corporations as effectually as though each subdivision was called Fort Smith and Greenwood counties. The individuality, so to speak, of Sebastian County is entirely destroyed and obliterated, and is only recognized in the fact that the official existence of the sheriff, clerk, treasurer and county judge is allowed to remain as monuments to mark the spot where now lies the defunct body of Sebastian County.''

It is true that the act construed in that case in direct terms says that the district shall be deemed for all purposes separate and distinct counties. But I think the language of the present act is strong enough to embody the same view. After creating separate chancery and circuit courts, § 19 provides for the creation of county and probate courts for the Central District. Sec. 19 expressly provides that the authority and territorial jurisdiction of the county and probate courts shall extend over the Central District the same and in like manner as if said district was a constitutional county of this State; and that the said county and probate court for the Central District shall have original and exclusive jurisdiction of all such cases as are now by law vested in the county and probate courts of this State, which have or may hereafter arise in the Central District.

The section also provides that all tax sales for the payment and collection of delinquent taxes shall be advertised and held in the respective districts as provided by law in like manner as if said districts were separate and distinct counties. Thus it will be seen that the act creates separate and independent judicial districts for county and probate courts as well as circuit and chancery courts, thereby in practical effect destroying the unity of Woodruff County and reducing the boundaries of each judicial district to an area below that which is prescribed by the Constitution.

In recognition of this decision, the Constitution of 1874 provided that Sebastian County may have two dis-

tricts and two county seats to which county, probate, and circuit courts shall be held as may be provided by law, each district paying for its own establishment. Art. 13, § 5 of the Constitution of 1874.

In recognition of it the Legislature of 1875, on Dec. 15, 1875, passed an act creating two judicial districts in Yell County, and the act made no provision whatever for the establishment of a county court for the Dardanelle District, or separate county courts. The county court of that county is held at the county seat at Danville. Separate probate, circuit, and chancery courts were established for the Dardanelle District. Thus it will be seen that the unity of the county for governmental purposes was in all respects preserved.

Reliance is placed in the majority opinion on the case of *Hutchinson* v. *Ozark Land Co.,* 57 Ark. 554, but I think that case sustains my view. There it was held that it was not within the power of the Legislature to create a levy of the county taxes that did not embrace the whole county; that, as a tax was for a county purpose, its burden could not be imposed upon a part only of the county's territory. As we have already seen, in § 19 of the present act it is provided that the authority and territorial jurisdiction of the county court shall extend over the Central District the same and in like manner as if said district was a constitutional county of this State. The section also provides that all taxes as well as the payment and collection of delinquent taxes shall be advertised and held within the respective districts as provided by law in like manner as if said districts were separate and distinct counties.

In *Patterson* v. *Temple, supra,* it was claimed that part of the enactment might be held void, and that the balance might be a good law. The court held that the act was indivisible under the well-known rule of constitutional construction laid down by Judge COOLEY in his work on Constitutional Limitations, and quoted therefrom the following: "Whether the other parts of the

statute must be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder.'' Continuing, the court said: ''Now, the objects of this law were to create two separate and distinct districts in Sebastian County, with all the powers and immunities of any constitutional county of the State, the area of each being less than six hundred square miles; which object, if carried out, would destroy the identity of Sebastian County. This, we say, cannot be done. Upon an examination of the whole act, each section is interwoven with the other in such a manner that no court could separate them without destroying the whole fabric, and, with the fall of one, the whole enactment must be declared void.''

Sec. 20 of the present act provides that, if any provision of the act is held to be unconstitutional, only that provision shall be declared void, and the remainder of the act shall stand. I think the most serious question in the case is whether or not this saving clause, when construed according to the principles of *Snetzer* v. *Gregg,* 129 Ark. 542, adopts a different rule of constitutional construction for acts held void in part than that laid down in *Patterson* v. *Temple, supra.* I think, however, that the sound rule is that, while this section is some indication of the legislative intention, it is merely declaratory of the rule heretofore laid down by this court on the same subject, and which is a rule of constitutional law. *State* v. *Bancroft* (Wis.) 134 N. W. 330, 38 L. R. A. (N. S.) 526, and *Springfield Gas & Electric Co.* v. *Springfield,* 292 Ill. 236, 18 A. L. R. 929.

If the saving clause in section 20 is merely declaratory of the rule of constitutional construction already adopted by this court, then this clause is governed also in this respect by the case of *Patterson* v. *Temple, supra.*