2010 Ark. 371

**Tim S. PARKER, Attorney at Law, and Ramona Wilson, Circuit Clerk and Ex Officio Recorder of Carroll County, Arkansas, Petitioners,**

v.

**Gerald K. CROW, Circuit Judge of Carroll County, Arkansas, Eastern and Western Districts, The Nineteenth Judicial District (East), Respondent.**

No. 10–327.

Supreme Court of Arkansas.

Oct. 7, 2010.

Parker Law Firm, by Tim S. Parker, Eureka Springs, Ramona Wilson, Berryville, for petitioners.

Dustin McDaniel, Att'y Gen., by: Colin R. Jorgensen, Ass't Att'y Gen., for respondent.

ROBERT L. BROWN, Justice.

Petitioners Tim S. Parker and Ramona Wilson bring this petition for writ of mandamus, prohibition, or certiorari, seeking to quash in their entirety Judge Crow's two orders of March 15, 2010, dissolving the Eastern and Western Judicial Districts of Carroll County. We grant the petition for writ of certiorari.

In 1883, the Arkansas General Assembly passed Act 74, which created the Eastern and Western Judicial Districts of Carroll County. The dividing line was the Kings River, which split the county. At that time, a courthouse existed in Berryville, which had been approved by a vote of the people, and it became the eastern-district courthouse.[1] Between 1883 and 1908 the

---

1. Berryville officially became the county seat on May 5, 1875, after several elections and lawsuits.

western-district court was held in a rented room in Eureka Springs. In 1908, the western-district courthouse was constructed in Eureka Springs. Carroll County has operated with split judicial districts and two separate courthouses for over 100 years.

On March 15, 2010, Respondent Gerald Crow, Circuit Judge of Carroll County, signed two orders. The first was in the case of *Trublood v. Hicks Trucking, Inc.*, CV 2008–218. The second was a standing order and was styled *In Re: Act 74 of 1883 and the Dissolution of the Eastern and Western Districts of Carroll County, Arkansas.*

In the *Trublood* order, the circuit judge found that Act 74 of 1883 was unconstitutional in that it attempted to create a new county in violation of article 13, section 1 of the Arkansas Constitution. He also found that Act 74 had been repealed by implication and also by enactment of superseding laws, specifically amendment 55 and the County Government Code. In addition, he found that the enactment of Act 797 of 1997 eliminated the Eastern and Western Judicial Districts of Carroll County and that Carroll County was one judicial district, the Nineteenth Judicial District East. The circuit judge further ordered the circuit and county clerks to consolidate all open cases and files at the courthouse in Berryville and eliminate the filing marks of "eastern" and "western" effective June 1, 2010. He added that jury pools be drawn from all registered voters of the county.

In his standing order issued the same date, the circuit judge repeated his conclusions regarding filings in the Carroll County Circuit Court, the consolidation of files in Berryville, and county-wide jury selection. He further ordered:

4. That this Order does not limit the authority of the Quorum Court of Carroll County to maintain offices at any location it deems necessary nor does it limit the Clerk's authority to maintain and staff any positions authorized by the Quorum Court of Carroll County.

5. That this order does not limit the authority of the City of Eureka Springs to conduct any business now conducted in the courthouse located in Eureka Springs, Arkansas.

6. That this Court may, in its sole discretion, hold any hearing or trial in the courthouse located in Eureka Springs, Arkansas as long as it is maintained by Carroll County.

7. That this Order does not affect the jurisdiction or operation of the District Courts of Carroll County as provided by existing statutes.

Petitioners Parker and Wilson seek a ruling from this court that the circuit judge exceeded his authority in the two orders because Act 74 of 1883 has not been repealed, is not unconstitutional, and is still in full force and effect. In addition, they allege that Eureka Springs is a de facto county seat of Carroll County.[2] Thus, they contend that two judicial districts remain in Carroll County pursuant to Act 74. They ask for an extraordinary writ to enforce such a ruling.

We first question the circuit judge's ruling in the *Trublood* case regarding Act 74 and the two judicial districts in

---

2. We note that the parties have specifically stipulated to "try" the issue of whether Eureka Springs is a county seat in this court as if raised in the petition for emergency relief. The wishes of the parties in this regard are not binding on this court. Moreover, it does not appear that the circuit judge directly addressed the county-seat issue in his standing order. Accordingly, it is not properly before this court.

Carroll County. What is immediately obvious to us is that the issues addressed by the circuit judge in the *Trublood* order do not appear to have been fully ₁₄developed by the parties in that proceeding. Rather, it appears that the judge developed the issues *sua sponte*, and we question his authority to do so apart from what had been developed by the parties in the adversary proceeding.[3] This raises the issue of whether we should address the findings and conclusions made by the judge in the *Trublood* order, which are outside of the issues raised in the case by the parties. Clearly, we should not.

■ We conclude, however, that because a standing order has been issued that summarizes the same legal findings and conclusions made that same day as the *Trublood* order and because that standing order continues to affect and impact the practice of law in that county, a petition for extraordinary relief is the appropriate vehicle to address the judicial-district issue. We further observe that the issues in the standing order have been fully developed by the petitioners and the State in conjunction with the petition for extraordinary relief in this original action. For this reason, we will address the issues raised by the standing order.

### I. *Superintending Control*

■ Amendment 80, section 4, specifically provides that the supreme court exercises general superintending control over all the courts of the state. Ark. Const. amend. 80, § 4. This court has defined superintending jurisdiction as one of three types of jurisdiction held by the courts of last resort; the other types are appellate and original jurisdiction. *Foster v. Hill,*

372 Ark. 263, 275 S.W.3d 151 (2008) (citing *Cohen v. State,* 732 So.2d 867 (Miss.1998)). ₁₅Original and superintending control are most often enforced through issuance of writs. *Id.* Superintending control is an extraordinary power that is hampered by no specific rules or means. *Id.* By virtue of the jurisdiction, the court may "invent, frame, and formulate new and additional means, writs, and processes." *Id.* (quoting *State v. Roy,* 40 N.M. 397, 60 P.2d 646, 662 (1936)). In *Hill,* this court exercised superintending jurisdiction and granted a petition for writ of certiorari where two divisions of the Circuit Court of Crittenden County assumed jurisdiction over the same case. *Hill,* 372 Ark. at 269, 275 S.W.3d at 156. In doing so, this court discussed the basis for exercising superintending jurisdiction under amendment 80. We said that we are bound only by the exigencies that call for its exercise. *Id.* at 268, 275 S.W.3d at 155. We added that superintending jurisdiction is used with caution and forbearance to further justice and to secure order and regularity in judicial proceedings where no ordinary remedies are adequate. *Id.* (citing *Spence v. N.D. Dist. Ct.,* 292 N.W.2d 53 (N.D.1980)).

■ The instant case provides a situation where the exercise of this court's superintending control is appropriate. The administration of justice is directly called into question when split judicial districts are eliminated by order of a circuit judge and the business of the circuit clerk is impacted. This court, accordingly, invokes its authority under amendment 80, section 4, to determine whether the writ should issue.

---

3. It is true that a party in *Trublood* moved for a change to Eureka Springs as a more convenient forum and cited Act 74. The judge granted the uncontested motion for change of location, which he described as "venue," but, again, the issue of two judicial districts in Carroll County was not developed by the parties.

## II. *Mandamus, Prohibition, or Certiorari*

■■ We begin by noting that amendment 80 of the Arkansas Constitution, section 2(E) provides, "The Supreme Court shall have power to issue and determine any and all writs necessary in aid of its jurisdiction. . . ." The purpose of the writ of mandamus is to enforce an established right or to enforce the performance of a duty. *Lackey v. Bramblett,* 355 Ark. 414, 421, 139 S.W.3d 467, 471 (2003) (citing *Axley v. Hardin,* 353 Ark. 529, 534–36, 110 S.W.3d 766, 769–70 (2003)). This court has often held that mandamus is an appropriate remedy when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion or official judgment. *Id.* A writ of mandamus is appropriate if three factors are established: (1) the duty to be compelled is ministerial and not discretionary; (2) the petitioner has shown a clear and certain right to the relief sought; and (3) the absence of any other adequate remedy. *Id.*

■ A writ of prohibition is issued to prevent or prohibit the lower court from acting wholly without jurisdiction. *Hatfield v. Thomas,* 351 Ark. 377, 379, 93 S.W.3d 671, 672 (2002) (citing *Ark. Democrat–Gazette v. Zimmerman,* 341 Ark. 771, 20 S.W.3d 301 (2000)). The purpose of the writ of prohibition is to prevent a court from exercising a power not authorized by law when there is no adequate remedy by appeal or otherwise. *Id.* A writ of certiorari lies to correct proceedings erroneous on the face of the record where there is no other adequate remedy; it is available to the appellate court in its exercise of superintending control over a lower court that is proceeding illegally where no other mode of review has been provided. *Casement v. State,* 318 Ark. 225, 884 S.W.2d 593 (1994) (citing *Lupo v. Lineberger,* 313 Ark. 315, 316–17, 855 S.W.2d 293, 293–94 (1993)). A demonstration of a plain, manifest, clear, and gross abuse of discretion is essential before this court will grant a petition for writ of certiorari. *Id.* (citing *Shorey v. Thompson,* 295 Ark. 664, 750 S.W.2d 955 (1988)). It lies when the judge has acted in excess of his or her authority. *See Conner v. Simes,* 355 Ark. 422, 139 S.W.3d 476 (2003).

■ A writ of mandamus is not the appropriate remedy in this case because petitioners are challenging the circuit judge's order on legal grounds and are not alleging that the judge failed to perform an official duty that is ministerial in nature. A writ of prohibition is not appropriate because the circuit judge has already acted by the entry of his standing order. We will, as a result, consider whether a writ of certiorari lies.

## III. *Act 74 of 1883*

Act 74 of 1883 is entitled "An Act to establish separate courts in Carroll County." Act of Mar. 12, 1883, No. 74, 1883 Ark. Acts 111. Section one of the Act states, "That the county of Carroll shall be divided into two Judicial districts to be called the Eastern District and the Western District." *Id.* Section six states that the two courts "shall be as distinct from each other and have the same relation to each other *as if* they were Circuit Courts of different counties." Act of Mar. 12, 1883, No. 74, 1883 Ark. Acts 113 (emphasis added). Section eighteen of Act 74 directs

> [t]hat the clerk of the County Court of Carroll county shall keep two financial records, in one of which he shall keep true and perfect record of the financial affairs of the Eastern District, and in the other he shall keep a similar record for the Western District. The financial affairs of each District shall be kept as separate and distinct *as though* the two

Districts were separate and distinct counties.

Act of Mar. 12, 1883, No. 74, 1883 Ark. Acts 116 (emphasis added). Section sixteen clarifies that "as to all matters not within the provisions of this Act, the county of Carroll shall be one entire and undivided county." *Id.*

■ The circuit judge contends that sections six and eighteen of Act 74 run afoul of article 13, section 1 of the Arkansas Constitution in that they create a new county. Article 13 of the Arkansas Constitution deals with procedures relating to counties. Article 13, section 1 addresses the size of counties; section 2 requires the consent of voters to change county lines; section 3 requires the consent of voters to establish a change of county seats; section 4 deals with drawing county boundaries; and section 5 specifically refers to Sebastian County.[4] Ark. Const. art. 80, §§ 1–5. Other than the reference to Sebastian County, no provision of article 13 speaks to judicial districts and two county seats.

The clear terms of Act 74, nevertheless, do create two separate judicial districts for circuit court within Carroll County and do not divide the county or attempt to create two separate counties. The qualifiers "as if" and "as though" in sections six and eighteen of the Act merely elaborate on the procedures and financial records the clerks should follow in each district. These phrases do not create separate counties. Furthermore, section sixteen of the Act saves the provisions from any

plausible unconstitutional interpretation regarding the division.

We hold that the circuit judge erred in his construction of Act 74 that two counties had been created.

### IV. *Repeal of Act 74 in 1987*

■ The circuit judge next contends that Act 74 was implicitly repealed by the codification of the Arkansas Code Annotated in 1987 because Act 74 was not codified. Arkansas Code Annotated section 1–2–105 (Repl.2008), however, reads:

The adoption of this Code shall not be construed to repeal any act or section or part of a section of an act in effect on December 31, 1987, and omitted from this Code, which ...

(5) Applies to one (1) or more judicial districts or one (1) or more counties within a judicial district, whether by specific reference thereto or by some other method of identification or classification.

Act 74 specifically refers to the judicial districts in Carroll County. The argument that the enactment of the Arkansas Code Annotated overturned Act 74 of 1883 because Act 74 is not codified is belied by the explicit language of section 1–2–105. Furthermore, this argument disregards the enactment of Arkansas Code Annotated section 16–17–904 in 2003, which specifically refers to Carroll County as having two judicial districts. *See* Ark.Code Ann. § 16–17–904(a) (2010).[5] This argument has no merit.

4. In his brief on appeal, Judge Crow argues that Act 74 violates article 13, section 1 of the Arkansas Constitution. He does not discuss section 2, 3, or 4. His contention is that Act 74 reduced the county size to below 600 square miles and is, therefore, unconstitutional. He refers to section 5, which allows Sebastian County to have two independently functioning judicial districts as support for his

argument that other Arkansas counties cannot maintain separate judicial districts that do not comply with the size and population requirements of section 1.

5. The circuit judge maintains in his brief on appeal that section 16–17–904(a)(2) is set to expire in 2012, but that argument glosses over the fact that it is in effect today.

## V. *Act 74 and Amendment 55*

The circuit judge next urges that Act 74 was repealed by implication by amendment 55 to the Arkansas Constitution. Amendment 55 concerns the powers of county government, county judges, and quorum courts. Arkansas Code Annotated sections 14–14–101 to—1314 (Supp. 2009), which was enacted pursuant to amendment 55, sets out the County Government Code and defines state law regarding the organization and powers granted to county governments and officials. The circuit judge specifically points to Arkansas Code Annotated section 14–14–201 as invalidating Act 74. Section 14–14–201 describes the legislative authority to change the boundaries of a county and the formation of new counties. The judge's argument in this regard presupposes that Act 74 created two separate counties rather than two judicial districts for circuit court. As previously discussed in this opinion, this conclusion misinterprets the language of Act 74, and specifically section 16 of the Act. We add that neither amendment 55 nor sections 14–14–101 to—1314 can reasonably be interpreted to repeal Act 74 of 1883 by implication.

## VI. *Act 797 of 1997*

The circuit judge further asserts that Act 797 of 1997, now codified at Arkansas Code Annotated section 16–13–3001, effectively repealed Act 74. Act 797 created the Nineteenth Judicial District East composed of Carroll County and the Nineteenth Judicial District West composed of Benton County. Prior to Act 797, the Nineteenth Judicial District contained both Carroll and Benton Counties. In 1997, Act 797 severed the two counties and gave Carroll County, as the Nineteenth Judicial District East, its own circuit judge and prosecuting attorney. The circuit judge urges that this, in effect, eliminated the Eastern and Western Judicial Districts in Carroll County and repealed Act 74 of 1883 by implication.

We do not find that the basic requirements of a repeal by implication exist in this case. *See Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994) ("This court has held that as a basic and fundamental rule when considering the effect of statutes is that repeal by implication is not favored and is never allowed except where there is such an invincible repugnancy between the former and the latter provisions that both cannot stand together."). Moreover, as already noted, section 16–17–904, which was enacted in 2003, refers to two judicial districts in Carroll County. This argument too has no merit.

## VII. *Separation of Powers*

We address, as a final point, whether the circuit court had the authority to eliminate a judicial district. Amendment 80, section 10, of the Arkansas Constitution reads:

> The General Assembly shall have the power to establish jurisdiction of all courts and venue of all actions therein, unless otherwise provided in this Constitution, and the power to establish judicial circuits and districts and the number of judges for Circuit Courts and District Courts, provided such circuits or districts are comprised of contiguous territories.

Circuit court judges, accordingly, are not granted the power to establish or dissolve judicial districts in Arkansas under amendment 80, although without question they have the authority to interpret state law. The sum total of what the circuit judge did, nonetheless, is to act in contravention of amendment 80 when he issued his standing order dissolving the Eastern and Western Judicial Districts in Carroll County. Though the judge contends he merely was interpreting Arkan-

sas law, the result of his standing order is to dissolve the eastern and western judicial districts in the county. This he cannot do, as such authority lies with the General Assembly.

We hold that the petition for writ of certiorari should be granted. The circuit judge proceeded wholly without jurisdiction in issuing his standing order, and his order shows a plain, manifest, clear, and gross abuse of discretion. The effect of the issuance of this writ will be to quash in its entirety the circuit judge's standing order of March 15, 2010, dissolving the Eastern and Western District Courts of Carroll County.

Petition granted. Writ issued.

DANIELSON and WILLS, JJ., concur in part and dissent in part.

DANIELSON, J., concurring in part, dissenting in part.

I concur in part with the majority that a writ of certiorari should issue; however, I dissent in part because I believe that is where our inquiry must end. The majority correctly states that certiorari lies to correct proceedings erroneous upon the face of the record when there is no other adequate remedy. However, it omits and disregards our longstanding rule that "*certiorari may not be used to look beyond the face of the record to ascertain the actual merits of a controversy,* to control discretion, to review a finding upon facts or review the exercise of a court's discretionary authority." *Evans v. Blankenship,* 374 Ark. 104, 108, 286 S.W.3d 137, 140 (2008) (emphasis added).

Certiorari is appropriate where a party claims that a lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *See id.* As the majority correctly holds, the circuit court was wholly without jurisdiction to dissolve the judicial districts and acted in violation of amendment 80; thus, certiorari is proper. What is improper is the majority's decision on the merits of the controversy, which is in direct contravention of this court's rules for reviewing petitions for writs of certiorari.

Whether the bases for the circuit court's dissolution of the judicial districts are meritorious is irrelevant for our purpose here; our sole concern is whether the circuit court had jurisdiction to issue the remedy it did. Here, it did not; thus, certiorari should issue, and our analysis should end there. It is for these reasons that I respectfully concur in part and dissent in part.

WILLS, J., concurring in part, dissenting in part.

I concur in the majority opinion and with the granting of the writ of certiorari, but I would do so on somewhat different grounds than the majority.

The circuit court treated the motion in the *Trublood* case as one requesting a change of venue, deemed it uncontested, granted it, and then gratuitously and wrongly invalidated the act which would have necessitated the venue change.[1] It thereafter entered a standing order implementing the latter conclusion. I have no hesitancy in concluding that this action constituted a plain, manifest, clear, and

---

1. Section 6 of Act 74 of 1883 provides that "the Circuit Court hereby established in the respective Districts of Carroll County shall be as distinct from each other and have the same relation to each other as if they were Circuit Courts of different counties, and may change the venue of case [sic] from one District to another, or to any other county in the Judicial circuit, in like manner as changes of venue are granted in this State."

gross abuse of discretion apparent from the face of the record.

It is rare for this court to reach the merits of the controversy when deciding a petition for a writ of certiorari. We have done so, however, in an exercise of our superintending control. *See Foreman v. State,* 317 Ark. 146, 875 S.W.2d 853 (1994). We have also done so to set aside some type of unauthorized relief ordered below that constitutes a plain, manifest, clear, and gross abuse of discretion for which there is no other mode of review. *See Helena Daily World v. Simes,* 365 Ark. 305, 229 S.W.3d 1 (2006) (writ of certiorari granted to set aside "gag order" constituting unauthorized prior restraint); *Ark. Democrat–Gazette v. Zimmerman,* 341 Ark. 771, 20 S.W.3d 301 (2000) (same); *King v. Davis,* 324 Ark. 253, 920 S.W.2d 488 (1996) (writ of certiorari granted to set aside order calling for a new election); *Letaw v. Smith,* 223 Ark. 638, 268 S.W.2d 3 (1954) (writ of certiorari granted to set aside refusal of trial court to modify its local rule requiring association of local counsel, where rule was contrary to statute and unreasonable). I therefore concur in the majority's decision to determine the merits of the controversy. I disagree, however, with at least some of the majority's resolution of the merits.

I agree that Act 74 of 1883 provides for the continued existence of two judicial districts in Carroll County and that the Act is not unconstitutional under the Arkansas Constitution, article 13, § 1. I also agree that neither Arkansas Code Annotated section 1–2–105, nor Act 797 of 1997, nor Arkansas Code Annotated section 14–14–201, nor amendment 55 to the Arkansas Constitution impliedly repealed the pertinent portions of the Act. I disagree, however, that Arkansas Code Annotated section 16–17–904 (Act 1727 of 2003), re-

peatedly invoked by the majority, has any real impact on the question.

As an initial matter, I agree that the "county seat" issue is not properly before us and is, in any event, not determinative of this appeal. This court in *Law v. Falls,* 109 Ark. 395, 159 S.W. 1130 (1913), discussed the legality of rebuilding a courthouse in Dardanelle in Yell County. Act 100 of 1875 created two judicial districts in that county with jurisdiction assigned as if the two districts were separate counties. The Act did not interfere with the holding of the court in Danville, the county seat. The Dardanelle courthouse was built but later burned down. The county court thereafter entered an order to build a new courthouse at Dardanelle at the expense of the county. The plaintiff sued, contending that the county court had no authority to provide for the building of more than one courthouse, and that the building must be at the "seat of justice," which meant the county seat. This court stated that

> however nearly "seat of justice" and "county seat" are synonymous, it is apparent that a seat of justice is not always a county seat, although a county seat is perhaps always a seat of justice. When this act became effective, upon the building of the courthouse, Dardanelle became a seat of justice, for here the courts sat and administered justice, and the public officers kept their offices, and performed the functions of their offices.

*Id.,* 159 S.W. at 1131.

I do not, therefore, consider it critical whether Eureka Springs is deemed a "county seat" or simply a "seat of justice" in determining whether Carroll County can have two validly created judicial districts, and I do not disagree with the majority's refusal to hinge its decision on that issue.

I do disagree, however, with the majority's repeated reliance on Arkansas Code Annotated section 16–74–904 as authority for the existence of two judicial districts. The fact that Arkansas Code Annotated section 16–17–904 (Act 1727 of 2003) refers to Carroll County as having two judicial districts and two county seats for purposes of holding district court can hardly be said to have created two judicial districts or county seats where they did not otherwise exist. It is unnecessary to look to section 16–17–904, because, in my view, Act 74 of 1883 remains the law as to the creation of two judicial districts in Carroll County. It is not unconstitutional, nor has it been superseded, as to the creation of two judicial districts. This conclusion is supported by our case law.

In *Hutchinson v. Ozark Land Co.,* 57 Ark. 554, 22 S.W. 173 (1893), this court addressed the constitutionality of a similar act in Clay County. *See* Act 14 of 1881. Two judicial districts were created and thereafter, the county court levied a different tax millage in each. A resident of the higher-taxed district sued, claiming the Act was unconstitutional under Arkansas Constitution article 16, section 5, which requires equality and uniformity in the levy of property taxes. This court invalidated the "financial provisions" of the Act,[2] stating,

> It is difficult, therefore, to see what effect can be given to the financial provisions of the act quoted above. But in determining this cause it is sufficient to say that these provisions cannot be treated as having created separate taxing districts without holding that they impair the unity and power which the

constitution secures to Clay county as a political subdivision of the state.

*Hutchinson,* 57 Ark. at 559–60, 22 S.W. at 175.

This court did not invalidate the entire Act and was careful to limit its holding to the financial separation provided for in the Act, the only question presented. *See also Woolard v. Thomas,* 238 Ark. 162, 164–65, 381 S.W.2d 453, 454–55 (1964) (stating that *Hutchinson* invalidated the Act "insofar" as it separated the financial affairs of the two districts). The *Hutchinson* court also relied on an earlier case, *Patterson v. Temple,* 27 Ark. 202 (1871), which invalidated as unconstitutional an act creating two judicial districts in Sebastian County, one in Greenwood and one in Ft. Smith.[3]

In *Patterson,* an act approved March 28, 1871, created not only two judicial districts and two circuit courts, but also two county courts and two probate courts, and provided for the separate assessment of property, the separate levy and collection of taxes, and the division of the indebtedness of the county in proportion to the taxable property of each. The allegation was that this Act violated a provision of the Arkansas Constitution of 1868 (article 15, section 1), identical to article 13, section 1 of our present Constitution, prohibiting the reduction of counties to less than six hundred miles. Although the *Patterson* court invalidated the Act, it acceded to the proposition that the legislature may create two judicial districts:

> But, it may be said, the General Assembly can create judicial districts and define the powers and jurisdiction of the courts therein created. While we may

---

**2.** Act 14 of 1881, like Act 74 of 1883, provides for two separate judicial districts and requires that "all revenue ... from all ... sources ... shall be used for the exclusive benefit of the district in which such revenue may arise."

**3.** The *Patterson* case was decided prior to the adoption of the Arkansas Constitution of 1874, which contains special provisions in that regard for Sebastian County. *See* Ark. Const. art. 13, § 5.

accede to that proposition, taken in its general sense, we emphatically deny that it can do so for Sebastian County, as a county, and thereby destroy all its corporate existence in that indirect way, and virtually make two counties under the name of districts.

*Patterson,* 27 Ark. at 210. The court in *Patterson* invalidated the entire Act, finding it nonseverable. *Id.*

A striking difference appears in the facts of the *Patterson* case and this case, however: Act 74 of 1883 does not create two separate "county courts," a feature of the Act the court found particularly troubling:

> [C]an the General Assembly create, for a single specified county, two separate and distinct county courts, clothed with all the powers and duties appertaining to such tribunals, when the justices of the peace are selected from townships whose area is admitted to consist of less than six hundred square miles ... ? We think not.

*Id.* at 208. That feature does not appear in Act 74 of 1883, and in my view, although its provisions—to the extent they purport to allow different tax levies in each district—are unconstitutional under Hutchinson, the remaining provisions pertaining to the creation and jurisdiction of circuit courts may nonetheless be given effect. *See, e.g., Walker v. State,* 35 Ark. 386 (1880) (Act of December 15, 1875, creating two judicial districts in Yell County and limiting the selection of jurors to each district was not unconstitutional as denying the right to a jury trial or as reducing the area of the county; it merely divided the county into two judicial districts and the question of whether the public convenience is served by holding court in Dardanelle, as well as Danville, the county seat, is a matter of legislative discretion); *Bonner v. Jackson,* 158 Ark. 526, 251 S.W. 1

(1923) (Act 111 of 1923, creating two judicial districts in Woodruff County, was not unconstitutional and the Act's provision creating two *county courts* was not squarely presented and to the extent it was unconstitutional would be severable under the severability clause.); *Morgan v. State,* 273 Ark. 252, 618 S.W.2d 161 (1981) (distinguishing *Robinson v. Greenwood,* 258 Ark. 798, 528 S.W.2d 930 (1975), which had invalidated an act creating two separate *quorum* courts in Sebastian County under amendment 55 to the Arkansas Constitution, and upholding, as against an allegation that it was contrary to amendment 55, Arkansas Constitution article 13, section 5, which allows Sebastian County to have two judicial districts).

In my view, therefore, those portions of Act 74 of 1883 that divide Carroll County into two judicial districts for the purpose of administering the courts of Carroll County are constitutional and have not been superseded by subsequent law. It is irrelevant in my view whether Eureka Springs is a "county seat" or merely a "seat of justice," and I do not believe Arkansas Code Annotated section 16–17–904 is controlling on the point. Finally, in my view, it is unnecessary to reach the constitutional issue regarding the separation-of-powers doctrine. I therefore concur in part with the majority opinion and dissent in part.