Cite as 2022 Ark. 146

# SUPREME COURT OF ARKANSAS
**No.** CV–22–124

| | |
|---|---|
| | **Opinion Delivered:** June 23, 2022 |
| THE TRAVELERS INDEMNITY COMPANY AND STEPHEN E. GOLDMAN<br><br>APPELLANTS<br><br>V.<br><br>THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS<br>APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-20-4834]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br>REVERSED AND REMANDED IN PART; DISMISSED IN PART. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellants, The Travelers Indemnity Company ("Travelers") and Stephen E. Goldman, appeal from the Pulaski County Circuit Court's order disqualifying Goldman from further participation as Travelers' counsel in a suit filed by appellee, the Board of Trustees of the University of Arkansas ("the Board"). For reversal, appellants argue that the circuit court erred by (1) revoking Goldman's pro hac vice admission and (2) excluding unvaccinated jurors from the venire. We reverse and remand in part and dismiss in part.

On August 31, 2020, the Board, acting on behalf of the University of Arkansas System, including the University of Arkansas for Medical Sciences ("the University"), filed suit against Travelers for breach of contract, declaratory judgment, and bad faith arising out of Travelers' denial of the University's insurance claim. The Board filed a first amended

complaint on October 14, 2020, a second amended complaint on August 9, 2021, and a third amended complaint on November 9, 2021. The Board alleged that it was entitled to benefits under its all-risk commercial property insurance policy with Travelers for losses and damages it suffered during the coronavirus pandemic and that no policy exclusion defeated coverage.

Goldman, an out-of-state attorney representing Travelers, filed a motion for admission pro hac vice, which was granted on October 15, 2020. Travelers filed an answer denying the material allegations in the Board's complaint, and the parties proceeded with discovery. At a pretrial hearing on January 31, 2022, the circuit court explained the procedures it had put in place to address COVID-19-related guidelines and concerns during the upcoming trial, which was scheduled for March 8, 2022. The court indicated that it was not going to require the wearing of masks in the courtroom and therefore had excused anyone from the jury pool who was not fully vaccinated. The court then stated, "[S]o that's what you've got for your jury panel and your pool, in case whoever doesn't prevail on the jury side— in case they want to make some argument that it was not a jury of their peers or something that was unconstitutional, that's what the Court has done." Neither party objected to the circuit court's procedures at that time.

On February 18, 2022, Travelers filed a motion objecting to the circuit court's exclusion of unvaccinated jurors from the jury pool. Travelers argued that a jury representative of the community should be selected without regard to COVID-19 vaccination status and that the exclusion of unvaccinated jurors violated Travelers' rights under the United States and Arkansas Constitutions. In addition, Travelers asserted that the

2

circuit court's rationale of requiring vaccination in the place of wearing masks was inconsistent with the public-health guidelines and this court's directive to follow such guidelines. Travelers attached multiple exhibits to its motion, such as articles from various publications as well as a December 13, 2021 email from the circuit court to counsel of record in which the circuit court set forth the special protocols in place for jury trials during the first quarter of 2022, including the vaccination requirement for jurors and all in-person participants.

The circuit court entered an order on February 22, 2022, denying Travelers' motion. Noting that the motion was filed more than two months after its December 2021 email to counsel and more than two weeks after the pretrial conference, the court found that the motion was "untimely, dilatory and was filed for the purpose of seeking a delay in the trial of this case." Further, the court ruled that Goldman's pro hac vice admission was revoked because several of the exhibits filed in support of Travelers' motion contained external hyperlinks to websites in violation of Arkansas Supreme Court Administrative Order No. 21, Section 9. The circuit court stated that these violations had "the ability to affect the integrity of the entire Arkansas judicial electronic filing system" and were "substantial and material violations of the Administrative Orders of the Arkansas Supreme Court." Remaining local counsel were ordered to immediately remove all offending materials from their electronic filing and were given leave to file replacement exhibits, which Travelers did.

On February 24, 2022, appellants filed a notice of interlocutory appeal from the circuit court's ruling disqualifying Goldman from further representing Travelers in this case.

Appellants also filed with this court an emergency motion for stay of the circuit court's order and the proceedings below, which we granted on February 28, 2022. On March 1, 2022, after the partial record had been filed with this court and our stay had been issued, the circuit court rescinded the portion of its previous order that revoked Goldman's pro hac vice admission and stated that Goldman would be allowed to participate in the upcoming trial. Appellants then filed a motion for clarification of our order granting a stay, and we granted that motion on March 2, 2022, clarifying that our February 28 stay applied to all proceedings in the case.

On appeal, appellants first argue that the circuit court erred by revoking Goldman's pro hac vice admission. "An order which disqualifies an attorney from further participation in the case" is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(8) (2021). The Board claims that the revocation of an out-of-state attorney's pro hac vice admission is not a disqualification under Rule 2(a)(8) and that this court therefore lacks jurisdiction to consider this issue in an interlocutory appeal. We disagree. "Disqualification" is defined as "[s]omething . . . that prevents a lawyer from representing a party." *Black's Law Dictionary* (11th ed. 2019); *see also Merriam-Webster's Collegiate Dictionary* (11th ed. 2014) (stating that "disqualify" means to "deprive of a power, right, or privilege"). The circuit court's order revoking Goldman's pro hac vice admission clearly prevented him from representing Travelers, and we therefore have jurisdiction to review this ruling.

The Board also contends that the disqualification issue is moot because the circuit court rescinded its March 1 ruling revoking Goldman's pro hac vice admission. As appellants

4

assert, however, the circuit court had lost jurisdiction to enter this subsequent order. Appellants appealed the circuit court's February 22 order and filed an emergency motion for stay pending the appeal, which we granted on February 28. On March 2, we clarified that our February 28 stay order applied to all proceedings in the circuit court. Accordingly, the circuit court's March 1 order is of no effect, and the issue of Goldman's revocation is not moot.

We have stated that disqualification of an attorney is a drastic measure that should be imposed only when clearly required by the circumstances. *Helena Country Club v. Brocato*, 2018 Ark. 16, 535 S.W.3d 272. This court reviews a circuit court's decision to disqualify an attorney, as well as a ruling on a motion for admission to practice pro hac vice, under an abuse-of-discretion standard. *Id.*; *Tobacco Superstore, Inc. v. Darrough*, 362 Ark. 103, 207 S.W.3d 511 (2005). An abuse of discretion occurs when the circuit court exercises its discretion thoughtlessly and without due consideration. *Convent Corp. v. City of North Little Rock*, 2021 Ark. 7, 615 S.W.3d 706. We have also held that an abuse of discretion may be manifested by an erroneous interpretation of the law. *Park Apartments at Fayetteville, LP v. Plants*, 2018 Ark. 172, 545 S.W.3d 755. While the Arkansas Rules of Professional Conduct are applicable in disqualification proceedings, a violation of the rules does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion. *Brocato*, *supra*.

Regarding the revocation of a nonresident attorney's pro hac vice admission, Rule XIV(g) of the Rules Governing Admission to the Bar states that "[i]f, after being granted permission to participate in the proceedings of any particular case in Arkansas, the non-

5

resident attorney engages in professional misconduct as that term is defined by the Arkansas Supreme Court Rules of Professional Conduct, the court may revoke the non–resident attorney's permission to participate in the Arkansas proceedings and may cite the non–resident attorney for contempt." Rule 8.4 of the Arkansas Rules of Professional Conduct, which defines misconduct, provides that

[i]t is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official; or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

Appellants argue that the circuit court's decision to revoke Goldman's pro hac vice admission was both legally erroneous and lacking in any reasonable inquiry or factual basis. Specifically, appellants contend that Rule XIV(g) provides grounds for revocation only for professional misconduct and that the circuit court's finding of "substantial and material violations of Administrative Order Number 21, Section 9" pertaining to electronic filing does not rise to the level of any of the types of misconduct listed in Ark. R. Prof'l Conduct 8.4. According to appellants, the external hyperlinks were deactivated in eight of the eleven exhibits that included hyperlinks, and the failure to deactivate the hyperlinks in three

6

exhibits was a mere clerical oversight. Appellants further assert that the motion at issue was signed and filed by Travelers' lead Arkansas counsel, not Goldman, who was not a registered user of the electronic filing system. In addition, appellants claim that several of the Board's electronic filings in this case, including the second amended complaint, also included hyperlinks to external websites, yet the circuit court took no action against either their pro hac vice counsel or their Arkansas counsel. Appellants argue that the impact on Travelers from the revocation of Goldman's admission was substantial and disproportionate to the electronic filing oversight, noting that Goldman had represented the company for approximately twenty-five years and had taken twenty-three depositions in this case, including those of the Board's lead witnesses and its expert witness. Finally, appellants contend that the revocation of Goldman's pro hac vice status without prior notice or a reasonable opportunity to be heard violated due-process requirements.

We agree that the circuit court abused its discretion by revoking Goldman's pro hac vice admission. The circuit court did not find that Goldman had committed any violation of the Arkansas Rules of Professional Conduct. Instead, the circuit court, without giving notice to appellants or an opportunity for them to be heard, summarily concluded that the failure to comply with an electronic-filing provision warranted the disqualification of Goldman simply because he was listed as one of the signors of the motion. This ruling was a drastic measure that does not comport with the provisions in Rule XIV(g) regarding revocation of a nonresident attorney's admission. Thus, we reverse the circuit court's ruling disqualifying Goldman from representing Travelers and remand.

In their second point on appeal, appellants argue that the circuit court erred by excluding unvaccinated jurors from the jury pool for its March 2022 trial. However, this issue is not properly before us in this interlocutory appeal. In the absence of a final order, our jurisdiction is limited to those orders listed in Ark. R. App. P.–Civ. 2(a)(2)–(13) as appealable on an interlocutory basis. An order denying a challenge to the selection or composition of a jury venire is not among those listed in Rule 2(a). Rather, we have reviewed such rulings only in the context of an appeal from a final order. *E.g.*, *Reams v. State*, 2018 Ark. 324, 560 S.W.3d 441; *Richardson v. Williams*, 327 Ark. 156, 936 S.W.2d 752 (1997); *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996).

While we have jurisdiction to consider the attorney-disqualification issue pursuant to Rule 2(a)(8), which is also the only issue that was designated in appellants' notice of appeal, a review of the circuit court's denial of Travelers' objection to the exclusion of unvaccinated jurors is beyond the scope of this limited appeal. *See, e.g.*, *Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, 639 S.W.3d 319 (holding that although appellant had presented three points in the interlocutory appeal, the only issue that we had jurisdiction to review was whether appellant was entitled to sovereign immunity); *SEECO, Inc. v. Stewmon*, 2016 Ark. 435, 506 S.W.3d 828 (refusing to entertain other issues in an interlocutory appeal pursuant to Rule 2(a)(9) under the guise of a challenge to class certification); *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119 (stating that the denial of a motion for sanctions does not fall within the purview of an interlocutory appeal of the denial of a motion to compel arbitration, which is authorized under Rule 2(a)(12). An interlocutory appeal may not be used as a vehicle to bring up for review other

matters pending before the circuit court. *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516 (2000). While appellants contend that we considered other issues in an interlocutory appeal pursuant to Rule 2(a)(8) in *Wiederkehr Wine Cellars, Inc. v. City National Bank of Fort Smith*, 300 Ark. 537, 780 S.W.2d 551 (1989), we reviewed only the propriety of the circuit court's order granting permission to file a third-party complaint against the law firm representing the appellant, which thereby required the disqualification of the law firm because it became a party to the litigation. Thus, that case is clearly distinguishable. Although appellants argue that resolving the jury-selection issue is a matter of substantial public interest, the fact that a significant issue may be involved is not sufficient, in itself, for this court to accept jurisdiction of an interlocutory appeal. *Hotels.com, L.P. v. Pine Bluff Advert. & Promotion Comm'n*, 2021 Ark. 196, 632 S.W.3d 742. Accordingly, we dismiss this portion of the appeal for lack of appellate jurisdiction and therefore do not reach the merits of this issue at this time.

Reversed and remanded in part; dismissed in part.

WEBB, J., concurs.

WOMACK, J., concurs in part and dissents in part.

**BARBARA W. WEBB, Justice, concurring.** I agree that the circuit court abused its discretion by arbitrarily revoking Stephen Goldman's *pro hac vice* admission. I write separately to address the circuit court's vaccination policy for jurors in this interlocutory appeal. I agree that the issue is not properly before the court on appeal. However, we have the authority to act as we see fit due to our superintending control over all courts in the state and the ability to address actions of judicial policy at any time and for any reason. *Parker v. Crow*, 2010 Ark. 371, at 4–5, 368 S.W.3d 902, 906.

We have defined superintending jurisdiction as one of three types of jurisdiction held by the courts of last resort; the other types are appellate and original jurisdiction. *Id.* (citing *Foster v. Hill*, 372 Ark. 263, 275 S.W.3d 151 (2008)). Superintending control is an extraordinary power that is hampered by no specific rules or means. *Id.* The exercise of this court's superintending control is appropriate when the administration of justice is directly called into question. *Id.*

The circuit court's vaccine mandate policy calls into question the administration of justice. It is appropriate for this court to act on issues of judicial administration when we learn of a lower court's policy that we think should be affirmed or rejected. While we cannot reach the issue on appeal, we can issue a *per curiam* that sets a statewide policy for all courts. It is incumbent upon us to do so promptly to ensure justice, equality, and uniformity in judicial administration across all the courts in this state.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I agree that the circuit court abused its discretion by arbitrarily revoking Stephen Goldman's *pro hac vice* admission. However, I respectfully disagree with the majority's holding that we cannot entertain the circuit court's unlawful vaccination policy on interlocutory appeal. While the majority is correct that consideration of the policy is outside the scope of appeal as contemplated by the rules of appellate procedure, our "superintending control over all courts in the state" authorizes this court to address the merits of the policy at any time. Ark. Const. amend. 80, § 4; *see also Parker v. Crow*, 2010 Ark. 371, at 5, 368 S.W.3d 902, 906 (holding that our "[s]uperintending control is an extraordinary power that is hampered by

10

no specific rules or means"). Accordingly, this court must invoke its superintending control to put an end to the circuit court's unlawful, discriminatory policy.

By systematically excluding almost 40 percent of the county's population ages eighteen through sixty-four from the jury pool, the circuit court's policy violates Travelers' right to a jury selected from a representative cross-section of the community. *See Richardson v. Williams*, 327 Ark. 156, 157, 936 S.W.2d 752, 753 (1997); *see also Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946) (noting that "[t]he American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community"). To establish a violation of the cross-section requirement, a party must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Richardson*, 327 Ark. at 157, 936 S.W.2d at 753 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Here, the circuit court's policy clearly excludes a distinctive group from jury service: those who have made a personal medical decision to not take the Covid-19 vaccination. As the record reveals, this group disproportionately includes large groups of individuals based on race, political affiliation, and career and educational choices. Even though this court has yet to define a "distinctive group," several federal circuits have adopted the following three-factor test to determine whether a group is "distinctive": "(1) the existence of qualities that define a group, (2) similarity of attitudes, beliefs, or experiences, and (3) a community of interest among group members." *E.g.*, *United States v. Raszkiewicz*, 169 F.3d 459, 463 (7th

11

Cir. 1999).  As a group that is generally skeptical of the government–corporate partnership to push people to take a hastily developed vaccine, the members excluded from the venire easily satisfy factors two and three of the *Raszkiewicz* test.  *See id*.  By virtue of their shared interests and beliefs, the excluded members also satisfy factor one and should be considered a distinctive group.  *See id*.

Next, the proportion of county residents excluded from jury services is sufficient to establish "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Richardson*, 327 Ark. at 157, 936 S.W.2d at 753.  When the parties submitted their briefs, 38 percent of Pulaski County residents between the ages of eighteen and sixty-four were not "fully vaccinated."  If (or when) a "booster shot" is required to be considered "fully vaccinated," more than half of Pulaski County residents over the age of eighteen could be ineligible for jury service.  This exclusion is extraordinary, and it amounts to unfair and unreasonable representation.  *See Richardson*, 327 Ark. at 157, 936 S.W.2d at 753.

Lastly, this is a systematic exclusion.  The Supreme Court has defined systematic exclusion as "inherent in the particular jury process utilized."  *Duren*, 439 U.S. at 366.  That is precisely what the circuit court has done here.  The circuit court implemented a policy that explicitly disqualified certain venire members from consideration, and the policy targeted those members based on their ideology and sincerely held beliefs.  Unlike instances in which this court has upheld exclusion of venire members who, for example, are not registered to vote, this policy excludes jurors because of their ideology.  *Richardson*, 327 Ark. at 158–59, 936 S.W.2d at 753.  This exclusion is particularly significant when the subject

12

matter of the lawsuit is inherently related to the circuit court's vaccination requirement. Thus, Travelers has established that the circuit court's policy violates Travelers' right to a jury selected from a representative cross-section of the community. *Id*. at 157, 936 S.W.2d at 753.

If the constitutional analysis was not enough, the circuit court's policy violates the State's ban on vaccine passports. Ark. Code Ann. § 20-7-145. In a prescient effort to guard against onerous mandates like the one the circuit court imposed, the General Assembly banned vaccine passports, which are defined as "documentation that an individual has been vaccinated against coronavirus 2019 (COVID-19)." *Id*. § 20-7-145(a). Specifically, the law prohibits the State from "requir[ing] individual[s] to use a vaccine passport in this state for *any* purpose." *Id*. § 20-7-145(b) (emphasis added). This law plainly prohibits the circuit court from implementing a vaccine requirement as a condition of jury service. *Id*. Therefore, the circuit court's exclusion of unvaccinated venire members is not only unconstitutional but also prohibited by state law, and we should exercise our superintending control to prohibit Arkansas courts from instituting such policies. Absent our swift decision to do so, criminal, and civil juries across the state are at risk of being tainted to an extent they cannot to overcome.

*Quattlebaum, Grooms & Tull PLLC*, by: *E. B. Chiles IV* and *R. Ryan Younger*, for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Dodds, Kidd, Ryan & Rowan*, by: *Lucas Rowan*, for appellee.