Cite as 2024 Ark. 134

# SUPREME COURT OF ARKANSAS

| | |
|---|---|
| IN RE COURTNEY RAE HUDSON V. ARKANSAS ADMINISTRATIVE OFFICE OF THE COURTS; SUPREME COURT OFFICE OF PROFESSIONAL CONDUCT; MARTY SULLIVAN, EXECUTIVE DIRECTOR OF THE ADMINISTRATIVE OFFICE OF THE COURTS; AND CHARLENE FLEETWOOD, ACTING DIRECTOR OF THE OFFICE OF PROFESSIONAL CONDUCT | **Opinion Delivered:** September 27, 2024 <br><br><br><br><br><br> <u>DISSENTING OPINION</u>. |

**KAREN R. BAKER, Associate Justice**

I am closing in on forty years in the practice of law. I have always felt that the law was firmly beneath my feet, but the majority's decision in this matter has given me reason to question that. The majority's reluctance to follow the letter of the law, and its tendency to bend the law to ensure a particular result, has been a continual source of problems. *See e.g.*, *Cowles v. Thurston*, 2024 Ark. 121, 695 S.W.3d 60 (Baker, J., dissenting). For the reasons that follow, I dissent.

As an initial matter, I feel as though it is important to explain why my dissent was not handed down simultaneously with the September 24, 2024 per curiam. In what appears to have been an attempt to silence any position contrary to that which is held by the majority, the per curiam was circulated to the court and we were given 23 minutes to read, research, and respond fully to the majority's opinion. I voted that we hold the opinion for discussion in order to give it the proper attention. However, I was notified that the per

curiam received a majority of votes and it would therefore be handed down immediately with dissents to follow. This alone is a break in the court's normal practices. Additionally, as some diligent court observers might have gathered over time, as a matter of practice this court hands down opinions on Thursdays—yet this opinion was forced out on a Tuesday. Is it possible that this hasty schedule stemmed from the fact that subpoenas in the pending civil action below had been issued for every participating member of this court on September 18th, the service of which was surely approaching? In fact, I received an email from Attorney Justin Zachary, the evening before the per curiam was handed down, seeking to arrange for service of the subpoena. I can only assume that my colleagues received similar requests. Despite the majority's attempt to dissuade any opposition, my dissent follows notwithstanding the hurdles placed before me because I believe that the people of Arkansas, the very people that the justices on this court have been sworn to serve, deserve thoughtful consideration of every matter that finds its way before us. The public deserves better.

Here, the majority concluded that, "pursuant to this court's 'general superintending control' and authority granted by Amendment 80, section 4 of the Arkansas Constitution, we vacate the circuit court's order granting preliminary injunctive relief and dismiss the pending civil action with prejudice." This presents a myriad of issues.

First, I would be remiss in not acknowledging the court's total lack of jurisdiction in this matter. Our jurisdiction cannot be established simply because a matter is featured in newspaper articles or social media posts, nor can we exercise jurisdiction over a matter merely because we receive notice that we had been subpoenaed. We have made clear that this court has three types of jurisdiction—appellate, original, and superintending. *Parker v.*

*Crow*, 2010 Ark. 371, at 4, 368 S.W.3d 902, 906. There was no appeal lodged in this court that would invoke our appellate jurisdiction, therefore, there was no appellate record for us to review. This court's jurisdiction is appellate in nature except where specific law or precedent has established authority for it to proceed in an original action. *Jackson v. Tucker*, 325 Ark. 318, 319, 927 S.W.2d 336, 336 (1996) (per curiam). The majority has cited to no authority that would permit this court to proceed by virtue of our original jurisdiction. Rather, here—pursuant to the court's "general superintending control"—the majority has reached down into a lower court and dismissed a pending civil case with prejudice. However, we have never exercised our general superintending control in this manner. Most recently, after we remanded a case back to the circuit court with instructions, we exercised our superintending control to admonish the circuit court judge and order him to take remedial measures after we found that he violated the Code of Judicial Conduct. *See Steinbuch v. Pulaski Cnty. Cir. Ct.*, 2024 Ark. 101, 689 S.W.3d 56. Similarly, in *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, the majority exercised its superintending control to reassign the lower court case on remand because the circuit judge had "repeatedly failed or refused to comply with this court's instructions regarding making specific findings[.]" 2023 Ark. 175, at 8, 678 S.W.3d 27, 32. Further, as noted in *Jud. Discipline & Disability Comm'n v. Maggio*, the court exercised its superintending control to relieve a circuit judge of his official duties after a complaint was filed with the Arkansas Judicial Discipline and Disability Commission arising from "comments [the judge] made in a public electronic forum" and "the judge's personal involvement in a hot-check case." 2014 Ark. 366, at 2, 440 S.W.3d 333, 334. Contrast these situations with the present matter, where the genesis of this court's

"jurisdiction" was the per curiam opinion itself. Here, the majority interfered with a pending circuit court case; characterized it as a confidential administrative matter in an attempt to insulate itself from scrutiny; plucked the case from the circuit court docket; and prevented a litigant from having her day in court. I disagree that this is what Amendment 80 contemplated as part of this court's general superintending control.

Second, the majority demonstrates a fundamental misunderstanding of the admittedly applicable exemption under the Freedom of Information Act. Arkansas Code Annotated section 25-19-105(b)(7) states that,

> It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter . . . (7) Unpublished memoranda, working papers, and correspondence of the Governor, members of the General Assembly, *Supreme Court Justices*, Court of Appeals Judges, and the Attorney General[.]

(Emphasis added.)

Despite this plain language, the majority has concluded that the "court's vote did not concern any communications from Justice Hudson to any party, as those communications are subject to a FOIA exemption set forth in Arkansas Code Annotated section 25-19-105(b)(7). As revealed in the circuit court pleadings, five justices voted to authorize Fleetwood to release the emails from Ballard to Justice Hudson." The majority's reasoning misses the mark, as the issue is not whether the court's vote involved "*communications from*" Justice Hudson. (Emphasis added.) Rather, as the plain language of the statute makes clear, whether the court's vote involved "*correspondence of* . . . Supreme Court Justices," is the relevant inquiry. "Correspondence" is defined as "communication by the exchange of letters" and "the letters written or received." *American Heritage Dictionary* (4th ed.) (2000).

4

Thus, the statutory exemption set forth in section 25-19-105(b)(7) would necessarily encompass any emails to or from Justice Hudson, and it was inappropriate for this court to conduct a vote on whether or not to release the relevant emails.

Third, I disagree with the majority's characterization that "confidential, unredacted, unsealed emails . . . concerning the court's confidential vote on the FOIA matter" had been attached to the pleadings in the lower court case. In my view, administrative matters of the court are not confidential—and they should not be. In order to quash a circuit court case that was certain to yield unfavorable information, the majority has painted its conduct as though it was all done in furtherance of an "administrative matter." The only cure for this is sunlight. It is my view that this court should publish a schedule of our administrative meetings and invite the public to attend.

I must also note that it is alarming that the majority has weaponized the Office of Professional Conduct by referring a member of the Bar of Arkansas for investigation for what appears to be nothing more than zealously representing his client. If an attorney represents a client that files a claim that conflicts with the majority's views, even an objectively viable claim, that attorney will now be subject to disciplinary action regardless of whether this court has the authority to review the underlying matter. Despite the majority's attempt to stifle litigation I would encourage the public to continue to litigate these issues—that is, if you can find an attorney brave enough to try.

In sum, the majority has intervened in ongoing litigation in circuit court, in an unprecedented misuse of our authority under Amendment 80. Additionally, even if this matter was properly before the court, which it is not, the majority should have recused

because a subpoena had been issued for every participating member of this court. The majority has, once again, chosen to liberate itself from the shackles of our longstanding precedent and the plain language of statutory law in order to reach a particular result. Consequently, I believe that the majority has breached public trust. Therefore, I refer the majority to the Arkansas Judicial Discipline and Disability Commission for investigation.

Accordingly, I dissent.